JOHN GRIGGS, PLAINTIFF, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, APPELLANT: LAMBERT, SHOTWELL & SHOTWELL ET AL., INTERVENERS, APPELLEES.

FILED MARCH 13, 1920.  No. 21257.

Attorney and Client: ATTORNEY'S LIEN. Defendant sought on appeal to reverse a judgment for $2,500. While the appeal was pending and undetermined, plaintiff accepted $500 in full settlement, and also stipulated for a dismissal of the appeal, all without the knowledge of plaintiff's counsel, whose lien for an attorney's fee, based on a written contract with plaintiff, which provided that counsel should "have a lien for their services upon any money or property received in settlement or recovered by judgment," of which defendant had notice, was on file when the judgment was rendered. Held, that the settlement and the agreement to dismiss could not operate to deprive the lienors of their right to the enforcement of their lien upon the entire amount of the judgment.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. Affirmed.

E. P. Holmes and Guy C. Chambers, for appellant.

Lambert, Shotwell & Shotwell and Amos P. Scruggs, contra.

DEAN, J.
Plaintiff recovered a judgment for $2,500, for personal injuries sustained while in defendant's employ, and de-

fendant appealed. While the appeal was pending here and undetermined, defendant paid plaintiff $500, which was accepted by him in full settlement of his claim. The parties at the time filed a stipulation that the appeal should be dismissed. The settlement was effected and the dismissal agreement entered into without the knowledge of plaintiff's counsel. Before the trial began in district court, plaintiff had contracted in writing with his counsel to pay an attorney fee contingent on the amount of recovery. The contingent fee contract provided that the interveners should "have a lien for their services upon any money or property received in settlement or recovered by judgment." To insure payment of their fee the interveners filed the contract in the district court, of which defendant had notice under section 272, Rev. St. 1913. When plaintiff's counsel discovered that settlement was made and that a stipulation to dismiss the appeal had been agreed upon, they asked and were given leave to intervene as claimants of an attorney's lien. We thereupon dismissed the appeal as to plaintiff and remanded the case, leaving the question of the attorney's lien to be heard and determined by the district court. When the hearing was had in that court, interveners recovered a "supplemental judgment" against defendant computed on the basis of their agreed share of the judgment as provided in the contract. From that judgment defendant appealed.

In respect of interveners' lien, defendant argues that it should be computed on the basis of plaintiff's settlement, namely, $500, and not on the basis of the $2,500 judgment, as contended by interveners. As applied to the facts we do not think defendant's argument is sound in law or equity. A good faith compromise and settlement between parties that is intended to bring vexatious and expensive litigation to an end, in which third parties have no interest, is always favored by the courts. But that is not the case before us.

Griggs v. Chicago, R. I. & P. R. Co.

There is evidence tending to prove that plaintiff was an improvident man of roving disposition. After the appeal was perfected he called on defendant's counsel at Lincoln and offered to settle for $200. Upon inquiry he said that he neither consulted nor did he intend to consult his counsel in the matter. Plaintiff was thereupon informed that a settlement could not be effected without the consent of his counsel, the lienors. Subsequently Mr. Stiers, the local claim agent of defendant for Lincoln territory, went from Lincoln to Omaha and called on interveners, informing them that plaintiff would settle for $200. Upon asking what they would be willing to accept in settlement he was informed that they would advise their client not to consider a settlement for less than $2,500, and that in payment of their fee they would not accept less than the amount represented by their lien. Sometime afterward plaintiff appeared at interveners' Omaha office and was advised against a settlement on Stier's terms. Before he left plaintiff informed his counsel that he would not settle with defendant. Subsequently the settlement and the agreement to dismiss were both entered into at Chicago between plaintiff and Stiers, who represented defendant; the chief claim agent of defendant having sent for him to come to Chicago and there meet plaintiff for that purpose.

The settlement, so far as it purports to affect the claim of the interveners, is of no force, because their rights were ignored. Their interest in the judgment became absolute upon rendition, and defendant could not thereafter, by a secret settlement with plaintiff, having notice, deprive them of the lien that was agreed upon. The contract between plaintiff and the interveners operated as an equitable assignment of the judgment to the extent of the interveners' claim, and, in the absence of reversal or modification on appeal, the plaintiff, having notice, could not give a valid discharge of the judgment, except as to his own unassigned interest therein, until payment

of the lien. *Corson v. Lewis,* 77 Neb. 446, on rehearing, 449; *Aspinwall v. Sabin,* 22 Neb. 73; *Union P. R. Co. v. Roeser,* 69 Neb. 62; *Desaman v. Butler Bros.,* 118 Minn. 198; *Weeks v. Wayne Circuit Judges,* 73 Mich. 256; *Louisville & N. R. Co. v. Proctor,* 21 Ky. L. Rep. 447; *Hammond, W. & E. C. R. Co. v. Kaput,* 61 Ind. App. 543; 2 Thornton, Attorneys at Law, secs. 425, 643; 2 R. C. L. 1081, 1082, secs. 171, 172. The evidence that $1,200 to $1,500 was the reasonable value of interveners' services in behalf of plaintiff Griggs was not denied by defendant.

It has been suggested that the appeal bond superseded the $2,500 judgment. True, but such bond is conditioned upon prosecuting the appeal to effect and without unnecessary delay. The terms of an appeal bond do not contemplate a surreptitious and secret settlement, by payment of one-fifth of the face of the judgment, and an agreement for a dismissal of the appeal, at a point 500 miles distant from the jurisdiction of the court in which the judgment was obtained, to the prejudice of lien holders, as in the present case. It is proper to observe that counsel for defendant were not concerned in the settlement as Chicago, nor in the dismissal agreement. We conclude that, in the absence of fraud or mistake, or of a reversal or modification of the judgment on appeal, plaintiff with notice could not by the settlement and the stipulation, both in question here, prejudice the rights of the interveners in the judgment.

The judgment is

AFFIRMED.

ROSE, J., dissents.

DAY, J., not sitting.

LETTON, J., concurring.

In this case the settlement and dismissal of the action were procured for a comparatively small sum in the absence of plaintiff's attorneys, who had filed a lien upon the judgment, of which the defendant had full notice. While the parties had a right to settle the case, they

could not by so doing divest the lien of the attorneys upon the judgment for their services actually rendered. While the fee provided for by the contract was a contingent one, such contingent fees are not unlawful in this state, and, if reasonable under all the circumstances, are approved by the courts. The evidence supports the finding of the court as to the value of the services rendered.

After the action was dismissed in this court, upon a showing by counsel the 'dismissal was set aside. Counsel then filed a petition in intervention setting up the facts as to their lien. Afterwards appellants dismissed the appeal with the consent of this court, but the matter of the attorneys' lien was left pending, and the issue as to the lien and its amount was remanded to the district court to determine. The dismissal of the appeal left the judgment in force so far as the attorneys' rights were concerned, and their lien attached thereto.

Authorities from other states are not of much avail here. In *Rice & Gorum v. Day,* 33 Neb. 204, Judge Maxwell says: ''Whatever the rule may be in other states, it is well settled in this state that the lien of an attorney upon a judgment to the extent of his reasonable fees and disbursements is paramount to any rights of the parties in the suit or to any set-off.'' And the uniform course of our decisions has been to construe the lien statute in such a manner as to protect just and honest claims for services rendered when a proper lien has been filed and notice given. *Griggs & Ashby v. White,* 5 Neb. 467; *Aspinwall v. Sabin,* 22 Neb. 73; *Greek v. McDaniel,* 68 Neb. 569; *Counsman v. Modern Woodmen of America,* 69 Neb. 710; *Jones v. Duff Grain Co.,* 69 Neb. 91; *Hoyt v. Chicago, R. I. & P. R. Co.,* 88 Neb. 161.

The lien statute would be of little use to counsel who had obtained judgment in favor of a client, if the parties might, without their knowledge or consent, come together outside of the jurisdiction and settle a judgment for a small fraction of the amount recovered.

The language of Chief Justice Adams of the supreme court of Iowa in *Smith & Baylies v. Chicago, R. I. & P. R. Co.*, 56 Ia. 720, seems applicable here:

"But the defendant claims that it was its right to pay the claimant directly, in the absence of the attorneys, and without their knowledge. The right to make such payment would doubtless be valuable in many cases. It is well known that irresponsible and unscrupulous claimants can be settled with upon more favorable terms after expensive litigation, if they can be allowed to receive the whole payment and cheat their attorneys. But however valuable the right may be, this consideration has no weight when addressed to a court. Nor do we think that there is anything which we can notice in the objection that if a lien is allowed attorneys will advise against proper settlements by compromise. The lien is valuable, mainly, where the claimant is irresponsible."

When defendant made the settlement, it must be taken to have made it in view of and with the expectation that it would pay the just demands of the attorneys, so far as protected by the lien.

CORNISH, J., dissenting.

If the opinion properly states the law, then I think the next legislature should enact a new law, as the legislature of 1917 considered doing. The opinion in effect holds that the parties to a lawsuit cannot settle their controversy without the consent of their attorneys — a rule never before announced, so far as I know, by any court.

It would not be surprising if we lawyers, who have ourselves received contingent fees, should be biased in favor of a practice absolutely forbidden at the common law. At common law, settlements were always encouraged by the courts. Lawyers were regarded as officers of the court, and anything which had a tendency to change the attitude of the lawyer, so that he might become interested as a litigant, was frowned upon as against public policy. Beginning with Chancellor Kent, all of the great lawyers, whose names are honored by the profession,

have condemned or expressed forebodings of the practice. The objection is not that a litigant, unable to raise cash in order to be represented by an attorney, is permitted to let the fee be contingent upon success, but to a situation, illustrated by the case in hand, where the attorneys have more to win or lose, as a result of the lawsuit, than the litigant himself. The emolument going to the attorney should bear some proper relation to the service rendered. I have known an attorney to receive a fee of $5,000 for a day's work, when the same attorney would be ready to give his services for $50 a day, or less. The practice should be regulated by law. The attorney should not be permitted, unbeknown to the jury and perhaps to the judge, to become, in all essential respects, a litigant. Chancellor Kent said: ''The purchase of a lawsuit by an attorney  *  *  *  is champerty in its most odious form; and it ought equally to be condemned on principles of public policy. It would lead to fraud, oppression, and corruption. As a sworn minister of the courts of justice, the attorney ought not to be permitted to avail himself of the knowledge which he acquires in his professional character, to speculate in lawsuits. The precedent would tend to corrupt the profession, and produce lasting mischief to the community.'' *Arden v. Patterson,* 5 Johns. Ch. (N. Y.) *44.

My special criticism here is that this decision violates precedent. Hitherto, while all of the decisions have not agreed in certain important respects, they have agreed upon certain propositions as follows:

(1)  Any contract between an attorney and his client which seeks to give the attorney control over the litigation and to make him a part owner of the lawsuit is void as against public policy. The contract here does not, by its terms, attempt to give the attorney control of the lawsuit; the opinion does that.

(2)  It is always the right of the parties to a lawsuit pending to come together and settle it. If collusively done to defraud the attorney, then there are varying

rules for the protection of the attorney against the fraud. Even after final judgment, when the rights of the attorney might be said to be more or less fixed or vested, the courts have held that the attorney cannot prevent a settlement for less than the amount of the judgment, if fairly made.

(3) A settlement, fairly made, is binding upon the litigants and their attorneys according to its terms. In such case, however, if the defendant has notice of an attorney's lien which has attached, he must not disregard it.

Coming now to the case in hand, it is to be observed that there was absolutely no fraud in the settlement made by the litigants, unless fraud can be predicated upon the mere fact that the litigants settled the case for less than the attorney would advise or consent to. Surely, if it was the right of the litigants to settle, it necessarily follows that no fraud can be found in the mere fact that they did settle. To say otherwise would be like disputing the sun.

To state, as in the syllabus of the majority opinion, that the settlement was had, "all without the knowledge of plaintiff's counsel," is inaccurate, unless the statement relies for its confirmation upon what, may we not say, comes near being a quibble. The opinion shows the contrary. When plaintiff came to defendant to settle, the defendant peremptorily refused to settle until plaintiff had received the advice of his attorney. This was had and settlement advised against. Afterwards the defendant told the attorney of the proposed settlement. The attorney had full knowledge of what the defendant proposed to do, even to the very terms of the settlement.

It would be foolish in the law to require that the settlement be had in the presence of the attorney who refuses to participate, or that he should know the hour and place of the settlement. It would be foolish also to require that the settlement be had in Lincoln, or Omaha, local

offices of defendant, rather than in Chicago, at its general office.

In the opinion it is said that the settlement was "surreptitious." Here, too, the opinion shows the contrary. A high court of justice cannot afford to attach such an epithet, which implies malice, to a litigant without good reason. The word should not be used.

A settlement without fraud having been made, a dismissal of the cause, in the absence of the attorney, could not make it fraudulent, because he was thereby deprived of no right. Dismissal follows settlement as a matter of course. The attorney could not prevent it. From first to last, no effort was ever made by defendant to deprive the attorney of his share of the amount to be paid in settlement. Primarily, fraud consists in colluding to defeat the attorney of his lien.

The opinion, as a whole, would hardly seem to make the case turn upon fraud. Constructive fraud, based upon the fact that the attorney was not notified of the proposed settlement, has never been found in any well-considered case. The settlement must be collusive, or, as the opinion says, "surreptitious." In any event, such a rule could not apply here, because the attorney had notice. Logically considered, it makes the attorney a part owner of the lawsuit, so that the litigants, in dealing with each other, are bound to procure the attorney's consent before a final settlement can be reached. For this, as I said, there is no precedent either in any text-book or decided case. In Minnesota, where the statute attempted to give the attorney a lien upon the cause of action (a state standing almost alone in this respect), it was held that the litigant could make a fair settlement against the consent of his attorneys.

Aside from consideration of public policy, the rule announced is unjust. A litigant's cause of action is his property. In all reason, he, and not his agent, must be permitted to manage his private affairs according to his own best judgment. In the absence of fraud, it will sel-

dom happen that any wrong will thereby be done to his attorney. In the instant case, the written contract between the attorney and client anticipated the case might be settled.

In 2 R. C. L. 1080, sec. 171, where the right of litigants to settle is discussed, it is said: ''The lien of the attorney may be defeated by such act of the client, though the latter agreed to pay the attorney a percentage of the proceeds of the judgment, and notwithstanding an express agreement on the part of the client not to dismiss, settle, or compromise without the consent of the attorney. Even in those jurisdictions where the attorney's lien attaches by virtue of statute to the cause of action, to the property involved, or to money in the hands of the adverse party, it has been held that the client may compromise or settle the litigation without the consent of the attorney, but where such right is exercised the lien of the attorney will not be defeated thereby, but will attach to the proceeds of the settlement.'' And, further, at p. 1001, sec. 80: ''The great weight of authority sustains the right of a client at any time before judgment, if acting in good faith, to compromise, settle, or adjust his cause of action out of court, without his attorney's intervention, knowledge, or consent.''

In 6 C. J. 791, sec. 404, the right of the attorney, where compromise is effected before final judgment, is discussed. It is said that the amount of the lien is controlled by the settlement. 2 Thornton, Attorneys at Law, sec. 435; *Williams v. Miles,* 63 Neb. 851, 855.

In *Corson v. Lewis,* 77 Neb. 446, cited in the opinion, the right to settle was not in dispute. The attorney's lien filed was lost because the settlement was in good faith.

In *Cones v. Brooks,* 60 Neb. 698, it was held that our attorney's lien statute was ''declaratory of the common law.'' At common law the attorney had no lien upon the judgment.

In *Patrick v. Leach,* 12 Fed. 661, the Nebraska statute was construed, and it was held that the attorney has no lien upon the judgment obtained by him in favor of his client. He has a lien on money in the hands of the adverse party going to his client. If we follow these decisions, the attorney could no more control the judgment or the lawsuit, in this state, than he could at common law.

In *Reynolds v. Reynolds,* 10 Neb. 574, where the client refused to go forward with the case and the attorney had spent his time and money in prosecuting it, the court permitted the attorney to be substituted as party plaintiff and proceed with the case. No settlement between the litigants was made. In *Jones v. Duff Grain Co.,* 69 Neb. 91, it was claimed by the attorney that a fraudulent settlement had been made to defeat him of his lien. The agreement was collusive. The attorney was not permitted to recover in that suit. It was stated, however, that if the settlement was collusive the attorney, in a proper case, might be permitted to prosecute the case to final judgment. This decision is contrary to the great weight of authorities. It has no application here, because here the case was not settled without the knowledge or consent of the attorney and by collusion. If, however, we concede the dicta in this case to state the law, and that the settlement was fraudulent and collusive, then the remedy would be that the settlement would be set aside and the attorney be permitted to prosecute the case to final determination. This right of the defendant, to have the case proceed after the settlement is set aside as fraudulent, is denied the defendant in the instant case.

In the majority opinion it is said in one place that the settlement was had while the action was still pending. This is true. In another place, it is said that the settlement was had after judgment and the rights of the attorney had become absolute. Just how there can be a judgment, giving the attorney or any one else absolute rights while the action is pending, I do not understand.

If it were suggested that, independent of a statutory lien, the attorney, by virtue of the contract made with his client, had some equitable rights in the cause of action, or the judgment appealed from, which would entitle him to control the cause, contrary to the judgment of his client, then the contract would be void as against public policy. Only by virtue of a statute, giving a lien upon final judgment, has he any rights in the judgment as such.

Since writing the above, I observe that A. L. R. has some late cases upon the subject:

In *Andrewes v. Haas*, 214 N. Y. 255, 3 A. L. R. 458, the court uses this sound language: "The notion (that the client must continue the litigation) that such a thing is possible betrays a strange misconception of the function of the legal profession and of its duty to society."

The opinion cites a Kentucky case. A later one, *Procter v. Louisville & N. R. Co.*, reported in 3 A. L. R. 461 (156 Ky. 465), holds that in a settlement like the one in hand attorney's fees are "to be computed as though the amount paid by way of compromise constituted the entire recovery."

The opinion also cites a Minnesota case. A later one, *Southworth v. Rosendahl*, reported in 3 A. L. R. 468 (133 Minn. 447), holds squarely that the litigant may settle without the knowledge or consent of his attorney, and in so doing "does not subject himself to the payment to the attorney of a contingent fee agreed upon in case of the successful outcome of the case." At page 472 there is an exhaustive note, and at page 485, discussing settlement after judgment, the note writer says: "But where the judgment has not become final, as where an appeal or a motion for a new trial is pending, the amount of the settlement, and not the amount of the judgment, controls as a general rule. (Cases cited.) And this is true, though the defendant was guilty of such fraud and undue influence in procuring the settlement as would entitle the client to have it set aside, where he has not

sought to have it set aside, but by his inaction has ratified the settlement.''

I would have preferred an opinion more in accord with the Code of Ethics, adopted by the American Bar Association, which prohibits an attorney from acquiring an interest in the subject-matter of the litigation, and expresses the opinion that agreements for contingent fees should be under the supervision of the court.