META SPETHMAN ET AL., APPELLEES, V. CARL HOFELDT ET AL., APPELLEES: CHARLES E. O'BRIEN ET AL., INTERVENERS, APPELLANTS.

2 N. W. (2d) 620

FILED FEBRUARY 27, 1942. No. 31212.

*Charles E. O'Brien* and *William R. Patrick, pro se.*

*Gilbert S. Brown, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an appeal by two attorneys from an allowance, which they claim is entirely inadequate, upon an attorney's lien duly filed in the district court.

An action upon an attorney's lien came before the district court for Sarpy county upon a petition of intervention, answer and reply. It was decreed that the interveners had a first lien of 25 per cent. upon the amount their client received, of $995.47, in the proceeds of the sale of certain real estate, thereby allowing interveners upon their attorneys' lien the sum of $248.87, with $50.95 costs and expenses advanced, and further cost of $8 in the intervention proceedings, and directed that such sums be paid within three days after the entry of the decree, instead of allowing them 25 per cent. upon the amount the attorneys claim she was entitled to receive, of some $5,175.

From this decree, the interveners have appealed solely on the one question of the amount due them on their attorneys'

lien. As no cross-appeal was taken, all other matters not appealed from are considered *res judicata.*

The interveners, in their motion for a new trial, set out that their client, Hannah Hofeldt, was entitled to nine-tenths of $5,750 under her written contract with the heirs of Fred Hofeldt, deceased; that the decree awarding interveners only 25 per cent. of the $995.47 for which said Hannah Hofeldt sold and assigned her interest in the cause of action and decree of foreclosure, without the knowledge and consent of the interveners and without satisfying their attorneys' lien, is contrary to the evidence, and in fraud of their rights under an attorney's lien.

Gilbert S. Brown, the attorney for the appellee, Mrs. Hannah Hofeldt, denies that interveners were actually her attorneys, and insists that the decree was exactly what she wanted done; that she dismissed the action herself, and the real question is whether the attorneys are entitled to any fee at all. It is further argued by him that the policy of the law is to encourage litigants to settle their cases; that this court should not take all she has and force her to pay the exorbitant attorney's fee they are claiming.

It appears that attorney Brown secured a contract for 25 per cent. for representing Hannah Hofeldt, although he also represented the other heirs, whose interests were in some respects adverse to hers. Then she dismissed Mr. Brown, and on June 17, 1939, signed a memorandum retaining attorney Charles E. O'Brien to represent her interests in a mortgage foreclosure action on the Carl Hofeldt farm in Sarpy county, and authorized him to take the steps he deemed necessary to protect her interests. This was followed by a contract for attorney's services, on the usual printed form, signed by Hannah Hofeldt July 8, 1939, employing Charles E. O'Brien to represent her in the matter of Meta Spethman et al. v. Carl Hofeldt et al., and providing that said O'Brien shall receive for his services a sum equal to 25 per cent. of all properties and moneys received by Hannah Hofeldt, which she agrees to pay, together with all legitimate expenses and court costs, and she authorized her at-

torney to deduct his fee from any moneys collected by her.

Thereupon, Mr. O'Brien employed Mr. Patrick to assist him as associate counsel at his own cost, and on December 12, 1939, filed notice of the attorney's lien of 25 per cent. of the recovery of their client, Hannah Hofeldt, which the county court found to be nine-tenths of $5,750.

It will aid in understanding the issues to recite some of the facts of the litigation. Fred Hofeldt in his last will devised his estate, consisting principally of an $18,000 mortgage, to his nine children, to the entire exclusion of his wife, Hannah. By an agreement, exhibit D, attached to the petition, all of the children in writing agreed that Hannah Hofeldt, the widow of Fred Hofeldt, should receive all of the interest of $720 a year due on the $18,000 mortgage given by the son, Carl Hofeldt, up to and until March, 1937, except a one-tenth part of said sum which was to go to certain minors, in consideration of which written agreement the widow accepted the terms of the will and waived her election to assert her one-third interest in the estate.

In strict accordance with this agreement, the county court directed that said real estate mortgage and note be transferred to Hannah Hofeldt, so that she might receive and collect the interest thereon up to March, 1937, less the share adjudged to be the share of certain minors, all as per decree of final distribution entered by the county court on August 2, 1929.

When the $18,000 mortgage became due on March 1, 1937, it was not paid, and the heirs employed attorney Brown to make collection of the same, and finally Carl Hofeldt, mortgagor, agreed to pay $40 an acre in full settlement of the mortgage, but he failed to carry out this agreement or others that he made. On June 12, 1939, a petition of foreclosure was filed and a receiver was appointed.

This case was tried before District Judge Wilson, and the decree of foreclosure provided that the net sum should be distributed *pro rata* as per agreement between the parties, and plaintiffs were granted a deficiency judgment.

When the matters set up in the petition of intervention of attorneys Charles E. O'Brien and William R. Patrick were at issue, Judge Wilson called Judge Rine of Omaha in to hear the case, who held for the interveners, but decided they were entitled to but $248.87.

Exhibit No. 16, dated June 14, 1940, was an assignment for one dollar of the interest of Hannah Hofeldt in the decree of foreclosure, in which she sold all of her interest therein, which was set out to be nine-tenths of 46/227 of $7,000, to Martin Bloom, of Plattsmouth.

There appears in the bill of exceptions, as interveners' exhibit No. 2, a letter, dated May 29, 1940, signed by Mrs. Hannah Hofeldt, addressed to attorney Charles E. O'Brien in which she states to him that she has been informed that an offer to purchase the Carl Hofeldt farm, in which she has an interest, will bring her slightly more than $900, and states that as her attorney he is requested to consent to such sale and to withhold any further action for a reasonable period.

Upon receipt of this letter, attorneys O'Brien and Patrick at once drove to see her, and explained the whole matter, and thereupon she signed the following statement written at the bottom of interveners' exhibit No. 2, reading as follows:

"June 1, 1940

"Dear Mr. O'Brien:

"Upon further consideration I hereby revoke the foregoing direction and hereby authorize you and Mr. Patrick to proceed with the appeal to the supreme court.

"(Signed)    Mrs. Hannah Hofeldt"

This case is replete with charges of fraud, misrepresentation and deceit between the attorneys and litigants, and it is charged on the one side that the children were willing to defraud their mother out of the amount they had agreed to pay her, and assisted Mr. Bloom, the banker at Plattsmouth, in buying out her large interests for a sum of approximately $900, and the interests of all of the heirs for some $7,000, and sold this property for $9,600, but were required to place

in escrow $1,500 of the purchase money to await the result of these intervention proceedings.

These charges are all denied by the heirs, who claim that it was the best disposition that could have been made of the property, and that they were all interested in their mother's behalf, and no one defrauded in any way.

The action in intervention, brought to enforce an attorney's lien of 25 per cent. upon the property belonging to the widow, Hannah Hofeldt, who was around 80 years of age, was the proper course to pursue. This lien was duly filed in the foreclosure action, and was a lien against the share therein belonging to the widow. Comp. St. 1929, sec. 7-108. Such a lien is similar to any other lien, as an artisan's lien, for instance, and the holder of the lien is required to prove the claim.

This court as early as 1873 adopted a statement of another court (*Shapley v. Bellows,* 4 N. H. 347) in holding that, "It is laid down as a general rule of law that an attorney has a lien upon a judgment to the extent of his reasonable fees and disbursements in the suit in which it was obtained, and that this right of lien is paramount to any rights of the parties in the suit, or to any set-off." *Boyer v. Clark,* 3 Neb. 161. See, also, *Griggs & Ashby v. White,* 5 Neb. 467; *Reynolds v. Reynolds,* 10 Neb. 574, 7 N. W. 322; *Myers v. Miller,* 134 Neb. 824, 279 N. W. 778, 117 A. L. R. 977.

A special attorney's lien for his services in procuring an award for his client rests upon the equity of an attorney to be paid his fees and disbursements, according to his contract, out of the judgment which he has obtained. 5 Am. Jur. 392, sec. 219.

The litigant has an absolute right to settle litigation, but a settlement made without the consent of an attorney does not affect the existing lien of such attorney. 7 C. J. S. 1180, sec. 231.

"Where a judgment to which an attorney's lien has attached has been compromised between plaintiff and defendant in fraud of the attorney's rights, such settlement and compromise may be set aside at the suit of the attor-

ney defrauded." *Jones v. Duff Grain Co.*, 69 Neb. 91, 95 N. W. 1. See, also, *Griggs v. Chicago, R. I. & P. R. Co.*, 104 Neb. 301, 177 N. W. 185.

"Negotiations with Opposite Party. A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel." Canons of Professional Ethics, Canon 9. See article X, Rules creating, controlling and regulating Nebraska State Bar Association. This is doubtless subject to a qualification, that if opposing counsel gives consent, then negotiations may be entered into with his client.

In *Zentmire v. Brailey*, 89 Neb. 158, 130 N. W. 1047, Judge Rose said: "Did the dismissal deprive the attorney of his right to enforce his lien on the attached property? The lien created in favor of the attorney a right independent of the wish or control of any of the suitors. The law is that the statutory lien of an attorney is paramount to any rights of the parties to the action. *Rice & Gorum v. Day*, 33 Neb. 204. It cannot be defeated by the stipulation of the litigants or by a dismissal without the attorney's consent. *Aspinwall v. Sabin*, 22 Neb. 73. Stanley, therefore, by dismissing the action when his attorney was absent and by failing to call to the attention of the court the existence of the lien of the attorney, did not deprive him of his right to the benefits thereof." And in paragraph 1 of the syllabus, it is said: "An attorney's lien in due form, when filed in a pending action, binds realty previously attached therein to satisfy the client's claim."

Under the facts in the record in the case at bar, Martin Bloom was chargeable with actual knowledge of the existence of the intervening attorney's lien at and prior to the time that he bought out the interests of their client. It has been held, under the terms of the Nebraska attorney's lien statute (Comp. St. 1929, sec. 7-108), that after an attorney's lien has attached a party adverse to the attorney's client cannot, if he has notice thereof, destroy

it by a voluntary settlement made without consent or knowledge of the attorney, without rendering himself liable for the value of the lien. See *Heinisch v. Travelers Mutual Casualty Co.,* 135 Neb. 13, 280 N. W. 234; 5 Am. Jur. 408, sec. 246; *Myers v. Miller,* 134 Neb. 824, 279 N. W. 778.

There is no contention that the widow actually received nine-tenths of $5,750, but the amount which she actually was entitled to receive, and could have received had she persisted and strenuously fought for her legal rights, would be the amount against which the attorney's lien would be computed.

If the widow conveyed her legal right in a much larger sum to Mr. Bloom for $900, or any other sum, that would not necessarily fix the amount upon which the interveners could recover 25 per cent. This is true because the interveners must show to the court that they have rendered the services which their contract required them to render.

An attorney's lien covers disbursements made on behalf of his client in taxable costs and also compensation for his services. If the amount of his compensation was agreed upon and the services have all been performed, the amount due is determined by his lien. If, on the other hand, there was no agreement as to the amount to be paid for his services, then the attorney would be entitled to recover the reasonable value of his services, and such amount could be collected by the enforcement of the attorney's lien. If the services had not all been performed at the time the client settled the litigation without the consent of his attorney, then the attorney would be entitled to the agreed price, if such a contingency is covered by the contract of employment, and, if there be no contract covering such an eventuality, then the attorney is entitled to a reasonable compensation for his services, and resort to the lien, in either event, for the enforcement of payment. 5 Am. Jur. 395, sec. 222.

It is clear that Mr. Bloom purchased her interest with knowledge of all of the facts in relation thereto, and would be required to show why the interest he purchased from

Hannah Hofeldt was not liable to pay whatever share should be charged against the assets which Mr. Bloom became in possession of by such assignment from Hannah Hofeldt.

The determination of these questions cannot well be made by this court from the evidence which appears before us at the present time, but there is sufficient evidence to convince the court that the amount of the finding and decree of the district judge was not sufficient to meet the amount due to interveners under the attorney's lien.

It is therefore reversed and remanded, with instructions to the district court to take evidence upon the points in issue, and render a new finding in accordance with the facts, and for the sum equitably due to interveners under the attorney's contract and lien.

REVERSED.