C. J. ELLIOTT ET AL., APPELLANTS, V. HENRY ATKINS ET AL., APPELLEES.

[FILED MAY 16, 1889.]

1. **Attorney:** LIEN. An attorney has a lien for a general balance of compensation on any papers of his client which may come into his possession in the course of his professional employment; upon money in his hands belonging to his client, and in the hands of an adverse party, in an action or proceeding in which the attorney was employed, *from the time of giving notice of the lien* to that party.

2. ———: ———. In order to render a defendant liable to a lien for the services of the plaintiff's attorney, it is indispensable that

a claim of lien be filed with the papers or given to such adverse party. Notice of a contract between the plaintiff and his client where no lien is claimed, will not bind the defendant or render him liable for the services of plaintiff's attorney.

APPEAL from the district court of Lancaster county. Heard below before CHAPMAN, J.

*Lamb, Ricketts & Wilson,* and *J. R. Webster,* for appellants.

*O. P. Mason, D. G. Courtnay,* and *J. B. Archibald,* for appellees.

MAXWELL, J.

In 1884 Luke Lavender brought an action in the district court of Lancaster county to redeem certain real estate from judicial sales. It is alleged in his petition in substance that in the year 1873 Lavender possessed a large quantity of land in and adjoining the city of Lincoln, a description of which is set out in the petition; that Lavender became indebted to many persons, and borrowed money and executed certain mortgages on portions of said real estate; and a large number of judgments were recovered against him and became liens upon his real estate; and that sales under executions issued on said judgments thereafter took place, and the land was sold to the defendants, and said sales were thereafter confirmed and deeds made to the purchasers. No fraud seems to be claimed in obtaining the judgments; but it is alleged that the defendants fraudulently prevented competition at the sales, and hence were able to purchase the property for less than its value, and for less than they otherwise would have been able to do.

A trial was had on the 5th day of November, 1885, and a decree rendered giving a right of redemption as to part of the lands in controversy, the decree being: "The court finds the facts upon the issues joined in favor of the plaint-

iff as to those lands described as the southwest quarter of the northwest quarter, of the northeast quarter of section twenty-five, township ten north, of range six east, in Lancaster county, Nebraska, and that the plaintiff is entitled to redeem the same, and be restored to the possession thereof, upon the payment within six months next ensuing, of the sum of two hundred and thirty-four dollars, with interest thereon at the rate of seven per cent per annum from March 22, 1879, until the same is paid into court for said defendants. It is therefore ordered and adjudged and decreed that upon the payment by the plaintiff of said sum into court for the defendants within the time aforesaid, the sheriff's sale of March 22, 1879, and deed to said lands, to wit, the southwest quarter of the northwest quarter, of the northeast quarter of section twenty-five, township ten north, of range six east, in Lancaster county, Nebraska, be set aside, annulled, and held for naught, and the title to said lands be quieted in the plaintiff as against the claim or title that said defendants or either of them, and all persons holding or claiming to hold under them or either of them, may have or claim to have under and by virtue of said sale and deed; and that the defendants and each of them convey to plaintiff the right, title, and interest, by them or either of them held or claimed in and to said lands by virtue of said sale and deed; and that plaintiff have possession of said lands and execution therefor; and if in default of the plaintiff making such payment within the time aforesaid, it is ordered and adjudged and decreed that the title in and to said lands, to wit, the southwest quarter ($\frac{1}{4}$) of the northwest quarter, of the northeast quarter of section twenty-five, township ten, range six east, in Lancaster county, Nebraska, be quieted in the defendant, Martha I. Courtnay, to which defendants except. This decree, however, is not to affect the judgment or execution, lien or liens, which said defendants or either of them may have or hold on said lands."

The plaintiff excepts thereto, and the court further finds "as to the rest and residue of said lands in the petition described, the issues joined in favor of the defendants and against the plaintiff, and it is further ordered and decreed that the title in and to the rest and residue of said lands in the petition described, be quieted in the defendants; plaintiff excepts thereto."

The court further adjudges and decrees that each party, plaintiffs and defendants, pay one-half of the costs of the action, taxed at $80.50. "Thereupon the parties each severally pray an appeal from so much of this decree as is adverse to them; a supersedeas bond of plaintiff· is fixed in the sum of $1,000, a bond on part of defendants is fixed in the sum of $500, the same severally to be filed within twenty days."

Soon after the rendition of the above judgment, Lavender and the defendants compromised the matters of difference between them, and the action was dismissed. The plaintiffs, however, asserted that under a certain contract with Lavender they had rights in the property, and insisted on prosecuting the appeal. The appeal, however, was dismissed. (See *Lavender v. Atkins*, 20 Neb. 206.)

The plaintiffs now prosecute the action in their own names. On the trial of the cause in the court below, the court found in favor of the defendants, and the action was dismissed.

The contract referred to, after setting out a description of the lands involved, the titles of the several actions where sales had taken place, provides: "And, whereas, it is deemed advisable by said Lavender to have additional legal counsel and assistance in the further management in said causes; therefore it is agreed by and between the parties hereto that the said Lamb, Ricketts & Wilson are retained in the said causes, and, together with said Elliott & Stevenson, are to conduct and manage said causes and all other suits necessary to be instituted for the purpose of recovering the

whole or any portion of said property in said district court, and any other court or courts, and prosecute the same to final judgment or decree; and upon a final determination of the matters involved in said suits, the property recovered is to be disposed of as follows: First, all judgments which may at such time be and constitute subsisting and valid liens so far as may be required or necessary to be paid, and all costs in said suit, whether advanced by said Lavender or otherwise, are to be paid. Second, after the full payment of such liens, taxes, and costs, the said L. Lavender is to convey to the said Elliott & Stevenson an equal one-third part of all the remaining property so recovered, which the said Elliott & Stevenson agree to accept in full satisfaction for all legal services rendered, or hereafter to be rendered by them in said matter; and the said Luke Lavender further agrees to convey to the said Lamb, Ricketts & Wilson an equal one-third of all the said property so recovered as aforesaid, which they, the said Lamb, Ricketts & Wilson, hereby agree to accept in full satisfaction for all legal services rendered or to be rendered by them in said matters; and if the interests of the parties hereto demand, or for any other reason the said property is converted into money, the net proceeds thereof are to be divided between the parties hereto on the same basis of one-third to each of said above-named firms; and the said Luke Lavender further agrees to give security for costs in all cases where the same may be required, and will advance and apply all the necessary costs and legitimate expenses of such litigations, which will be first repaid him out of the proceeds as above set forth."

The existence of this contract was unknown to the defendants until about the time of the dismissal of the action. Its existence was known, however, before the payment of all the consideration. The plaintiffs seek to apply the same rule against the defendants as would prevail against a purchaser of real estate with notice of an outstanding contract

for the sale of the same.   In our view, however, that rule does not obtain in cases of this character.   In the case at bar there was no sale nor assignment of any portion of the real estate or its proceeds.   There was no absolute transfer to the plaintiffs.   They were merely employed to conduct the litigation to a successful termination, when all that should be realized after paying the expenses was to be divided into three parts, of which the plaintiff in that action was to have one part, and each firm of attorneys a part.

Section 8, chapter 7, Compiled Statutes, provides that: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment, upon money in his hands belonging to his client, and in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party."

In *Boyer v. Clark*, 3 Neb. 161, it was held that this right was superior to the rights of the parties in the suit or any set-off.

In *Griggs v. White*, 5 Neb. 467, the notice of the attorney's lien was filed with the papers in the case, and the lien held to be valid and binding.   In the same case, however, certain other attorneys claimed a lien, but not for services rendered *in that case*, and the notice was held insufficient.

In *Reynolds v. Reynolds*, 10 Neb. 574, an action was brought on two promissory notes.   The attorneys for the plaintiff filed an attorney's lien, of which notice was given to the defendant.   Afterwards the plaintiff came into court and dismissed the case without prejudice.   Her attorneys thereupon asked leave to proceed with the action to enforce their lien, and leave was granted and the action dismissed, except as to the lien.   The court, by Lake, J., say: "It may not be wholly out of place for us to say that, under circumstances readily suggested, one of which, and proba-

bly an indispensable one, was here present — the attempted dismissal of the case by the plaintiff — we should regard the course pursued not only permissible, but eminently proper."

The latter case was cited with approval in *Oliver v. Sheeley*, 11 Neb. 521.

An attorney, therefore, who desires to enforce a claim for his services, must file a lien to that effect; otherwise he cannot enforce a claim against the adverse party. This claim for a lien may be filed with the papers in the case, and the adverse party will be chargeable with notice of its existence. The existence of a contract between a client and his attorney, where there is no claim for a lien, would not be notice to the adverse party that he intended to assert the claim against him, as it might be presumed that such attorney intended to rely on the responsibility of his own client. In the case at bar there is no lien claimed or filed on behalf of the plaintiffs, and nothing to apprise the defendants that claims would be asserted against them.

The judgment of the court below must therefore be affirmed.

JUDGMENT AFFIRMED.

THE other Judges concur.