WALTER PETERSEN AND ELSIE C. PETERSEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60230. Filed April 25, 1962.

138

*Donald R. Ross, Esq.*, and *Orin Contryman, CPA*, for the petitioners.

*Ivan L. Onnen, Esq.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1952 in the amount of $29,215.89, and by amendment to his answer asserted a claim for an increase of $4,630.64 in the deficiency. The petitioner alleged an overpayment of the tax by the amount of $16,407.97.

The principal question presented is whether, as determined by the respondent, the amount of an award by the Motor Carrier Claims Commission received by the petitioner in 1952 constituted taxable income in the year 1952 or whether, as contended by the petitioner, he made a valid election pursuant to section 99 of the Technical Amendments Act of 1958, with the result that such award is to be deemed to be income received in the years 1944 and 1945, the years during which the petitioner's motor carrier transportation system was in the

possession or control of the United States. Also presented are the questions (1) whether the amount received in settlement of petitioner's claim should properly include an amount of $13,008.55, representing advances made by the Government for operating expenses during the period of Federal control and for which the Government was given credit in determining the amount payable to the petitioner; and (2) whether, if there was a valid election under section 99, the legal fees paid by the petitioner in 1952 for services in obtaining payment of his claim should be applied in reduction of the amount of the award deemed to be income received in 1944 and 1945, as claimed by the petitioner, or whether such fees are deductible only from income of 1952 as contended by the respondent. With respect to the last issue, the respondent by amended answer alleged that of the amount of $24,460.33, which he allowed as a deduction for 1952, $6,115.08 was erroneously allowed, asserting that to that extent the expenditures were for the promotion of legislation, and this was his ground for making claim for an increased deficiency. The parties have stipulated that $1,834.52 of the amount paid as attorneys' fees was for the promotion of legislation and is not deductible as a business expense.

FINDINGS OF FACT.

Most of the facts have been stipulated and are incorporated herein by this reference.

The petitioners are husband and wife residing at Grand Island, Nebraska. They filed a joint income tax return for the taxable year 1952 with the district director of internal revenue, Omaha, Nebraska. Walter Petersen will hereinafter be referred to as the petitioner.

On and prior to August 11, 1944, the petitioner was engaged in business as a common carrier of property by motor vehicle, doing business under the name of Nielsen and Petersen with principal place of business at Grand Island, Nebraska. He kept his books and reported income upon the cash receipts and disbursements method of accounting. He owned and operated tractor-trailer combinations, pickup and delivery trucks, and service cars and also leased or owned certain real estate and miscellaneous personal property having to do with such business.

Pursuant to Executive Order No. 9462, issued by the President of the United States on August 11, 1944 (3 C.F.R. 1943–1948, p. 322), the Director of the Office of Defense Transportation took possession and control of the petitioner's motor carrier transportation system and all property used therein, as of August 12, 1944, and such possession and control were retained by the United States Government until October 20, 1945. On August 11 the Federal Manager in charge of operations of systems taken over issued an order which provided in part:

Title to the properties and other assets of which possession has been taken remains in the owners thereof. Possession by the United States is not exclusive, and the United States asserts, and will assert, only such control over the properties in its limited possession as may be necessary to accomplish the purposes of operation and of said Executive Order.

During the period August 12, 1944, to October 20, 1945, the petitioner's motor transportation system and properties were operated pursuant to a contract between the United States Government and the petitioner. Therein it was provided in part:

a. The operation of the aforesaid transportation system and properties will be for the account of the carrier and the carrier will retain, after returning to the United States of America all funds expended by the Government for and incident to the operation of the carrier's motor carrier transportation system and properties, all the income or proceeds resulting from such operation and will pay all operating expenses and costs related to the business of the carrier other than the compensation and expenses of personnel of the Federal Manager.

b. The carrier has nominated and the Government has appointed as Operating Manager, Walter Petersen who except where otherwise specifically directed in writing by the Federal Manager, shall operate the said motor carrier transportation system and properties in the usual and customary manner and within the limitations and restrictions upon his authority as Operating Manager customarily imposed by the carrier.

c. The carrier will supply working capital for the operation of said motor carrier transportation system and properties to the extent of its ability and will make no diminution thereof without prior written approval of the Federal Manager.

d. The carrier will continue to transport property as a carrier by motor vehicle in its usual and customary manner except to the extent otherwise directed in writing by the Federal Manager.

\*       \*     \*     \*     \*     \*     \*

3. The carrier does hereby:

\*     \*     \*     \*     \*     \*     \*

d. Agree to reimburse the United States of America for all funds expended by the Government for and incident to the operation of the carrier's transportation system and properties.

e. Agree, so long as there remains unpaid to the United States of America funds expended by the Government for and incident to the operation of the carrier's motor carrier transportation system and properties, to deposit all funds accruing from such operation in a bank or banks mutually acceptable to the parties hereto, and to disburse funds therefrom only upon checks countersigned by a person designated by the Federal Manager.

4. Unless first terminated by the Government upon written notice to the carrier, this contract shall remain in effect so long as there remains unpaid to the United States of America any funds expended by the Government for and incident to the operation of the carrier's motor carrier transportation system and properties. \* \* \*

From time to time during the period between August 12, 1944, and October 20, 1945, the United States advanced funds for and incident to the operation of petitioner's motor carrier transportation system and properties. On August 28, 1944, the Federal Manager established

a bank account in his name and that of the petitioner's company with an initial deposit of $5,000. Thereafter funds were deposited from time to time as needed. The petitioner was permitted to disburse funds from this account upon checks countersigned by the Federal Manager, or a person designated by him, and he drew checks against this account over the period from October 28, 1944, to February 13, 1945, totaling $13,008.55, of which $8,993.55 was expended for payroll in 1944 and $4,015 was expended for licenses in 1945.

Thus, during the period from August 12, 1944, to October 20, 1945, the United States Government advanced $13,008.55 in connection with the operation of petitioner's motor carrier transportation system and properties. At no time prior to May 19, 1952, did the petitioner reimburse the United States for the funds advanced in this amount.

The petitioner filed a claim with the Motor Carrier Claims Commission under the provisions of the Act creating the Commission (Pub. L. No. 880, 80th Cong., 62 Stat. 1222, as amended) seeking compensation for the taking over of its property for public use during the period above mentioned. Such claim was pending with such Commission until May 19, 1952, when such Commission entered its final determination with respect to the petitioner's claim. It determined that from August 12, 1944, to October 20, 1945, the United States possessed, controlled, and used the petitioner's transportation system and all its property used or useful in the operation of such system; that the taking and use of petitioner's transportation system and properties required the payment of just compensation to the petitioner pursuant to the fifth amendment to the Constitution of the United States; that as a part of just compensation the United States was indebted to the petitioner for the use of petitioner's properties in the amount of $75,961.76 (being the net rental value of all of petitioner's transportation system and other properties) ; [1] that as against such amount the United States "was entitled to a credit in the amount of $13,010.41"; that the United States was therefore indebted to the petitioner in the amount of $62,951.35; and that the United States was further indebted to the petitioner "in a sum equivalent to interest at 4% per annum on the sum of $62,951.35 from October 20, 1945 to date of payment, said sum also being a part of just compensation." [2] The credit of $13,010.41 consisted of the amount of $13,008.55 advanced by the Government in connection with the operation of the petitioner's transportation system, plus the amount of $1.86 which the Motor

---

[1] The Commission stated:
"In a case of taking for temporary use the normal measure of just compensation is the fair rental value of the property so taken and used."

[2] In this connection the Commission stated:
"An additional sum is computed in the manner of interest, not to be paid as interest, but as a part of the total compensation which would repay petitioner for its loss in the property taken. This additional sum is to make the total allowed compensate petitioner as fully as though payment had not been deferred. *Phelps* v. *United States*, 274 U.S. 341."

Carrier Claims Commission determined to have been the operating profit realized on the operation of the transportation system between August 11, 1944, and October 20, 1945, which profit remained with the petitioner's assets upon termination of possession and control.[3]

The sum equivalent to interest, found to be due the petitioner pursuant to the determination of the Motor Carrier Claims Commission, was $17,014.06.

Pursuant to the determination of the Motor Carrier Claims Commission, the United States Government issued a check to the order of petitioner in the amount of $79,965.41, the proceeds of which were deposited to the account of Walter Petersen Building Fund with the First National Bank of Grand Island, Nebraska, on August 25, 1952.

On or about August 25, 1952, the petitioner issued checks against the bank account of the Walter Petersen Building Fund as follows:

| Check No. | Payee | Amount |
| --- | --- | --- |
| 1 | First National Bank of Grand Island, Nebraska | $19,504.33 |
| 2 | First National Bank of Grand Island, Nebraska | 347.73 |
| 3 | Paul Halpine | 3,998.27 |

Checks 1 and 2 above were issued for the purchase of cashier's checks payable to the Northwest Security National Bank of Sioux Falls, South Dakota, as trustee for R. G. May, an attorney who represented the petitioner in prosecuting his claim before the Motor Carrier Claims Commission. The petitioner had agreed to pay May a percentage of the amount received. The Government's check in the amount of $79,965.41 actually was received by the attorney, who sent it to the First National Bank of Grand Island through the Northwest Security National Bank with instructions to pay the proceeds to the petitioner only upon the delivery by petitioner to the First National Bank for transmission to the Northwest Security National Bank of cashier's checks of $19,504.33 and $347.73.

The amount paid by the petitioner in connection with his claim for compensation was $24,460.33, consisting of attorneys' fees in the amount of $23,850.33 and accounting fees of $610.

In the joint income tax return for the year 1952 the petitioner reported a tax liability for that year of $9,314. Therein he did not include as income of that year any amount received on account of

---

[3] In this connection the Commission stated:

"In cases in which there was a loss, it was borne out of the petitioner's assets, and constituted a complete taking and consumption of such assets to the extent of the loss. In cases in which there was a profit, this profit was contained somewhere in the returned properties and the returned properties were thus augmented by the amount of the profit. The result is that petitioner is to be awarded compensation in the amount of the loss in the one case, and the Government is to be credited with the amount of profit in the other.

"In some cases, the Government advanced funds for operations. In such cases, if the amount of the advance has not been repaid, the Government is to be allowed a credit in such amount."

the award of the Motor Carrier Claims Commission. He did report a net recovery of $55,505.08 (this being the amount of the Government check of $79,965.41, less attorneys' and accountants' fees of $24,460.33), but treated this amount as being income of the years 1943, 1944, and 1945 pursuant to section 611 of the Revenue Act of 1951, upon which he computed aggregate additional taxes for those years in the amount of $16,377.97. He reported this amount of tax on the face of his 1952 tax return separate and apart from the $9,314 tax computed as due on income for 1952.

In the notice of deficiency for the year 1952, dated October 7, 1955, the respondent took the position that section 611 of the Revenue Act of 1951 was not applicable. He therefore determined that the petitioner had additional ordinary income for 1952 in the amount of $68,513.63 arising from the award of the Motor Carrier Claims Commission. The respondent stated:

This amount represents the award you received from the Motor Carriers Claims Commission. It should have been reported as ordinary income on your 1952 Federal income tax return. However, you erroneously applied Section 611(a) of the Revenue Act of 1951, which specifically relates to railroads, to $55,505.08 of the total amount, and computed the tax on it as though it should be ratably reported during 1943, 1944, and 1945, the years during which the Federal government operated your truck line. The remaining portion of $13,008.55, which represents an advance previously paid to you was not included in income in 1952, nor any prior year.

The petitioner filed a petition with this Court on November 21, 1955, and an amended petition on January 3, 1956, alleging that the award did not constitute taxable income, or that if it did it constituted capital gain and/or that it was subject to taxation in accordance with section 611 of the Revenue Act of 1951.

On September 2, 1958, Congress enacted section 99 of the Technical Amendments Act of 1958.[4] The regulations pursuant to section 99,

---

[4] SEC. 99. AMOUNTS RECEIVED BY CERTAIN MOTOR CARRIERS IN SETTLEMENT OF CLAIMS AGAINST THE UNITED STATES.

Notwithstanding the provisions of section 42 of the Internal Revenue Code of 1939, an amount received in settlement of any claim against the United States arising out of the taking by the United States (pursuant to Executive Order Numbered 9462, dated August 11, 1944 (3 C.F.R., 1943–1948, p. 322)) of possession or control of any motor carrier transportation system owned or operated by the taxpayer shall, at the election of the taxpayer, under regulations prescribed by the Secretary of the Treasury or his delegate, be deemed to be income which was received or accrued in the taxable years during which such motor carrier transportation system was in the possession or control of the United States. The election referred to in the preceding sentence shall be made, under regulations prescribed by the Secretary of the Treasury or his delegate, within one year after the date of the enactment of this Act, and, if made, shall be irrevocable. The period for assessment of any deficiency attributable to the inclusion of income in any taxable year of the taxpayer by reason of the application of this section shall not expire prior to one year after the date on which the taxpayer makes the election referred to in the first sentence, notwithstanding the provisions of section 275 of the Internal Revenue Code of 1939 or any other provision of law or rule of law which would otherwise prevent such assessment. Notwithstanding section 292 of the Internal Revenue Code of 1939, no interest shall be assessed or collected for any period prior to March 15, 1953, with respect to that part of any deficiency which is attributable to the inclusion of income in any taxable year by reason of the application of this section.

prescribing the manner of electing, were published on August 8, 1959.

On September 1, 1959, the petitioners filed amended joint income tax returns for the years 1944 and 1945 in which they reported income from the award of the Motor Carrier Claims Commission in the amount of $68,513.63 (this being the gross amount of the award, $92,973.96, less the attorneys' and accountants' fees of $24,460.33). They allocated $22,472.47 to the taxable year 1944 and $46,041.16 to the taxable year 1945, treating these amounts as long-term capital gains and including in taxable income one-half of such amounts. In the amended return for 1944 the petitioners deducted, among other items, amounts expended for payroll in large amounts, and in the amended return for 1945 they deducted, among other items, amounts expended for operating and miscellaneous taxes and licenses in the aggregate amount of $5,486.29. They reported a net operating loss for 1944 and net income of $27,368.71 for 1945, paying additional tax for the latter year in the amount of $11,759.66. With such returns the petitioners signed and submitted to the director of internal revenue a letter dated August 21, 1959, stating as follows:

I hereby elect to take advantage of the election provided for me under Section 99 of the 1958 Revenue Act whereby I am permitted to carry back and report income in accordance with the regulations prescribed in the Federal Register August 8, 1959, page 6389 pertaining to such acts.

Item #1—The total amount of settlement received—$68,513.63.
Item #2—The taxable year involved during which the United States had possession of control are August 10, 1954 to October 20, 1955. [Sic—1944 and 1945]
Item #3—The amount of the settlement applicable to each year is as follows:

|  | Days | Percentage | Amount |
|---|---|---|---|
| 1944 | 143 | 32. 8% | 22, 472. 47 |
| 1945 | 293 | 67. 2% | 46, 041. 16 |
|  |  |  | 68, 513. 63 |

We are also enclosing amended returns for 1944 and 1945 and remittance for taxes due on 1945 plus interest from 3–15–53 in accordance with Section 99 of the 1958 Act and Regulation as referred to above. (T.D. 6405)

On March 14, 1961, the petitioners filed an amendment to their amended petition alleging further:

Petitioners contend that under Section 99 of the Technical Amendments Act of 1958 the petitioners made a valid election and that the "amount received in settlement" should have been prorated as income on a day basis from August 10, 1944 to October 20, 1945; that the "amount received in settlement", and thus properly attributable to income during said period, was the sum of $79,965.41 less actual expenses of recovering said amount in the sum of $24,460.33 (which sum the Commissioner erroneously contends should be reduced by 25% and applied to the year 1952) or a net "amount received in settlement" of $55,505.08; that the Commissioner has erred in determining that said expenses are

attributable to the year 1952, and has further erred in including in the "amount received in settlement" the sum of $13,008.85 [*sic*] pursuant to regulation 39.42–8 (a), 24 F.R. 115, August 8, 1959, for the reason that said regulation contradicts the statute (Section 99) it seeks to interpret and is an illegal and invalid regulation to the extent it attempts to include "advances previously made" in the "amount received in settlement," and for the further reason that the statute of limitations has run on the assessment of taxes relating to this amount.

On March 27, 1961, the respondent filed an answer to such amendment denying the above allegations and alleging in part:

The gross amount of the award made to petitioner Walter Petersen, doing business as Nielsen and Petersen, by the Motor Carrier Claims Commission was $92,973.96, computed as follows:

| | |
|---|---|
| For Use of Properties | $75,961.76 |
| *Less:* Operating Profit | 1.86 |
| | $75,959.90 |
| *Add:* Sum Equivalent to Interest | 17,014.06 |
| Total | $92,973.96 |

The gross amount of the award, i.e. $92,973.96, constituted income taxable to the petitioners in the taxable year 1952.

\*   \*   \*   \*   \*   \*   \*

Unless the petitioners made a valid election under section 99 of the Technical Amendments Act of 1958, the advance of $13,008.55 is properly taken into account for federal income tax purposes only in the taxable year 1952.

OPINION.

The first question to be considered is whether the petitioners made a valid election, pursuant to section 99 of the Technical Amendments Act of 1958 and the regulations promulgated pursuant thereto, to have the amount which they received in 1952 in settlement of their claim against the United States deemed to be income which was received during the taxable years 1944 and 1945. Section 99, set forth in footnote 4, *supra*, provides that the election shall be made under regulations prescribed by the Secretary or his delegate. The regulations pursuant to section 99 were published on August 8, 1959 (24 Fed. Reg. 6389), as an amendment to section 39.42–8 of Regulations 118, and were made applicable to years covered by Regulations 111, namely, years beginning after December 31, 1941, and before January 1, 1952. Pertinent portions of such regulations are set forth in the margin.[5]

---

[5] SEC. 39.42–8 AMOUNTS RECEIVED BY CERTAIN MOTOR CARRIERS IN SETTLEMENT OF CLAIMS AGAINST THE UNITED STATES.—(a) *In general.*—(1) Notwithstanding the provisions of section 42(a) or of paragraph (a) of § 39.42–1, an amount received in settlement of any claim against the United States arising out of the taking by the United States (pursuant to Executive Order 9462, dated August 11, 1944 (3 CFR 1943–48, p. 322)) of possession or control of any motor carrier transportation system owned or operated by the taxpayer shall, at the election of the taxpayer made in accordance with paragraph (c) of this section, be deemed to be income which was received or accrued in the taxable years during which such motor carrier transportation system was in the possession or control

## 146

The respondent takes the position that the petitioners did not make a valid election under section 99 and the regulations because they did not comply with the regulations in that they did not set forth in their statement of election or in their amended returns for 1944 and 1945 the total amount of settlement received, and that the part of the settlement which they set forth in such statement was treated in their amended returns as income from the sale or exchange of a capital asset.

The regulations provide that the statement to be filed with the district director shall show the "total amount of settlement received," and further provide that the amount received in settlement means "the gross amount of the award, including interest, and before reduction on account of advances previously made to the taxpayer." It is respondent's position that the amount of settlement received was $92,973.96, consisting of compensation for use of the trucking business, $75,961.76, less the operating profit of $1.86, plus the sum equivalent to interest, $17,014.06; whereas the petitioners in their statement of election showed the total amount of settlement received as $68,513.63, which is the amount of $92,973.96 minus $24,460.33, the amount of attorneys' and accounting fees incurred in connection with recovering the claim.

There can be no question upon this record that the petitioners intended to make an election pursuant to section 99 of the Technical Amendments Act of 1958. They timely filed a statement to that effect, accompanied by amended returns for the taxable years 1944 and 1945. The respondent does not question that they complied with the regulations in every other respect. On brief he states that he does not suggest that he was deceived by any act of the petitioners and further states that he has not at any time claimed to be without

of the United States. An amount referred to in the preceding sentence means the gross amount of the award, including interest, and before reduction on account of advances previously made to the taxpayer unless the amount of the advances was previously included in the income of the taxpayer for Federal income tax purposes. Except as provided in subparagraph (2) of this paragraph, no part of such income shall be treated as income from the sale or exchange of a capital asset. In the event the period during which the taxpayer's property was in the possession or control of the United States covers more than one taxable year, the amount of the settlement shall be allocated ratably over the period during which the carrier's system was in such possession or control.

    *      *      *      *      *      *      *

(c) *Manner of election.*—An election under paragraph (a) of this section to treat the amounts awarded as having been received or accrued in prior years shall be made by filing a statement with the district director for the district in which the returns were filed. The statement, accompanied by amended returns, shall be filed for any taxable years in respect of which the tax is to be redetermined in accordance with the provisions of paragraph (b) of this section. Such statement shall indicate that the taxpayer has elected under the provisions of section 99 of the Technical Amendments Act of 1958 to report amounts received in settlement of claims against the United States in accordance with such provisions and shall also show:

    (1) The total amount of settlement received,
    (2) The taxable year or years (and the period in each such year or years) during which the United States was in possession or control, and
    (3) The amount of such settlement applicable to each such taxable year.

The election must be made or on before September 2, 1959, and if made, shall be irrevocable.

knowledge of all the pertinent facts. The instant case had been pending before this Court for nearly 3 years before section 99 was enacted providing for the election. There were attached to the original petition which was filed on November 21, 1955, a copy of the determination of the Motor Carrier Claims Commission and other documents disclosing all information with respect to the award and the legal fees. However, the respondent contends that the regulations are not unreasonable and must be strictly complied with in order to exercise a valid election.

The petitioners did set forth in their election statement an amount purporting to represent "total amount of settlement received." If it be assumed for present purposes that the respondent is correct in his position that the total amount of settlement received was $92,973.96, we cannot conclude that the petitioners' error in stating the amount to be $68,513.63 would defeat their attempt to make an election under section 99 and the regulations. The question which the respondent has raised is, in reality, a question of substantive law upon which he and the petitioners are at odds. From the testimony of the petitioner it appears that he believed that he was justified in representing that the amount of $68,513.63 was the "total amount of settlement received" for the reason that, although the total award was $92,973.96 and the Government's check issued in his favor was in the amount of $79,965.41, the check was under the control of his attorney who had been retained on a contingent fee basis and who insisted that his fee be paid before releasing the check to the petitioner. This has been the petitioners' contention, advanced in good faith, since the inception of this case before this Court, and on brief they maintain that the legal fees incurred in recovering the award are a proper offset in determining the amount of the award which they contend they are entitled to treat as income received in the taxable years 1944 and 1945. Section 39.42–8(c) of the regulations sets forth the procedural rules for making the election. We think the regulations may not properly be interpreted as rendering an election invalid merely because a taxpayer has attempted to raise a question of substantive law by stating the total amount received in settlement in a different amount than that believed by the respondent to be correct. Under the circumstances of this case, we think the petitioners substantially complied with the regulations and made a valid election pursuant to section 99 and the regulations.

Nor does the fact that the petitioners in their amended returns for the taxable years 1944 and 1945 treated the amount as capital gain affect the validity of their election. They had a clear right to raise the issue as to whether the award was to be treated as capital gain.[6]

---

[6] At the time the election statement was filed two United States Courts of Appeals had considered this precise question. In *Midwest Motor Express, Inc.* v. *Commissioner*, (C.A. 8) 251 F. 2d 405 (Jan. 15, 1958), affirming *Midwest Motor Express, Inc.*, 27 T.C. 167, it

It follows that under section 99 the amount received in settlement of the claim is to be excluded from income of 1952.

There remain for decision other issues relating to the amount which is to be considered as the amount received in settlement. As stated above, the respondent takes the position that the amount received in settlement was $92,973.96 (which consists of the compensation for use of the system, less the operating profit of $1.86, plus the sum equivalent to interest awarded), before reduction on account of advances previously made and without reduction on account of any legal fees incurred. He, therefore, contends that if a valid election was made by the petitioners the full amount of $92,973.96 is to be excluded from income of 1952, and deemed to be income received in the taxable years 1944 and 1945. He further contends that the legal expenses (in the reduced amount stipulated by the parties) constitute deductible expenses of the year 1952 only.

The petitioners' contentions are summarized on brief as follows:

1. The $13,010.41 credit was not taxable income in any year; in the alternative, it was income in 1944 and 1945, and the statute of limitations had run on the right to assess a deficiency; in the alternative, it was income only in 1952, since it was not an "amount received in settlement," and thus could only be classified as the compromise of a debt due the government; that the Regulation including this sum in "the amount received in settlement" is invalid.

2. The interest received in the amount $17,014.06 was income only in 1952 and the Regulation is invalid to the extent it attempts to abrogate existing law and include interest in "the amount received in settlement of any claim against the United States * * *."

3. That in determining the "amount received in settlement" the attorneys' fees of $23,850.33 were properly deducted and the proper amount taxable in 1944 and 1945 was $62,951.35 less $23,850.33 attorneys' fees.

It is pertinent to observe that the only year before us for consideration is the taxable year 1952. The petition in the instant case is based upon a notice of deficiency issued as to only that year. Section 99 of the Technical Amendments Act of 1958, in providing that under appropriate circumstances an amount received in settlement of such a claim as is here involved is to be deemed to be income received in the taxable years during which the transportation system was in the possession or control of the United States, did not provide that any tax resulting from the application of the provisions of such section constituted a part of the tax for the year of actual receipt of the amount. Rather, section 99 provides for a recomputation of the tax liability for the prior years and provides an additional period for assessment of any deficiency for those years resulting from its appli-

had been held that such award was taxable as ordinary income, whereas in *Gillette Motor Transport, Inc.* v. *Commissioner,* (C.A. 5) 265 F. 2d 648 (1959), reversing a Memorandum Opinion of this Court, it had been held that the award resulted in the receipt of capital gain. The *Gillette* case was at that time pending before the Supreme Court of the United States, which thereafter reversed the decision of the Court of Appeals. *Commissioner* v. *Gillette Motor Transport, Inc.,* 364 U.S. 130 (1960).

cation. Accordingly, it is not within our jurisdiction to determine the amount of tax liability for the taxable years 1944 and 1945, or to determine whether assessment of any deficiency for those years is barred by operation of the statute of limitations. However, some of the contentions raised by the parties relate directly to the tax liability for the taxable year 1952, and these we may properly consider.

As pointed out above, the petitioners contend that the "amount received in settlement" should not properly include an amount of $13,010.41 (representing the credit consisting of the amount of $13,008.55 advanced by the Government in connection with the operation of the petitioner's transportation system plus the amount of $1.86 which the Motor Carrier Claims Commission determined to have been the operating profit realized on the operation of the transportation system during the period of Government control); that such amount did not represent taxable income in any year; that, alternatively, it was income in 1944 and 1945, and that assessment of any tax thereon is barred; and that, alternatively, if it was income at all it was income in 1952. The last alternative is apparently based upon the theory that if the amount of $13,008.55 is taxable it results from the cancellation, in 1952, of petitioner's indebtedness.

We cannot agree with these contentions of the petitioners. During the period of Government control of the petitioner's transportation system such system was operated under a contract under which the petitioner agreed to pay all operating expenses and costs and further agreed to reimburse the United States for all funds expended by the Government incident to the operation. The Motor Carrier Claims Commission determined that the just compensation was to include an amount of $75,961.76 (being the net rental value of the petitioner's system and other properties) and that as against such amount the United States was entitled to a credit which included the $13,008.55.[7] Accordingly, the amount of the award was offset by the amount of $13,008.55 and the Government issued its check in a net amount. This was tantamount to the payment to the petitioner by the Government in 1952 of the full amount of the award, undiminished by the credit, and the simultaneous payment by the petitioners of their obligation of $13,008.55 to the Government. Accordingly, but for the provisions of section 99, it would be considered that the petitioners had received in 1952 ordinary income in the amount of the undiminished award. Inasmuch as the purpose of section 99 is to carry back

---

[7] Section 8 of Pub. L. No. 880, 80th Cong., 62 Stat. 1222 (under which the Motor Carrier Claims Commission functioned), provides:

"The final determination of the Commission shall be in writing, shall be filed with its clerk, and shall include (1) its findings of the facts upon which its conclusions are based; (2) a statement (a) whether there are any just grounds for relief of the claimant and, if so, the amount thereof; (b) whether there are any allowable offsets, counterclaims, or other deductions, and, if so, the amount thereof; and (3) a statement of its reasons for its findings and conclusions."

to the years of Government control income from the settlement of a claim which would otherwise be taxable in the year of receipt, we think it clear that the "amount received in settlement" must be determined without reduction of the award by the credit of $13,008.55. We think the regulations in so requiring are consistent with the statute. We find nothing in the legislative history of section 99 which would indicate that the regulations are contrary to the purpose of the statute. See S. Rept. No. 1983, 85th Cong., 2d Sess., p. 114, 1958-3 C.B. 1035, 1036.

Since the undiminished award constitutes income which, pursuant to the election made, is deemed, under section 99, to have been received in the taxable years 1944 and 1945, it necessarily follows that the award, including the amount of $13,008.55, is excludible from income of 1952.[8] It should be added that there is no indication or contention that the petitioners had at any time previously included these advances in taxable income. We perceive no merit in the petitioners' contention that the amount of $13,008.55 constitutes taxable income in 1952. The debt was not canceled, as petitioners contend, but was paid in the manner set forth above.

On brief the petitioners contend that the amount of $17,014.06, representing the portion of the award equivalent to interest, should not be considered as a part of the "amount received in settlement" of the claim which, under section 99, is to be deemed income received in the taxable years 1944 and 1945. Rather, they contend that such amount constituted taxable income in 1952, their argument being that since they are on the cash receipts and disbursements basis and since the award was received in 1952, this amount is subject to the general rule that interest is taxable in the year of receipt in the case of a taxpayer on the cash basis.

These contentions were first raised on brief. In their election statement and in their amended returns for the taxable years 1944 and 1945, the petitioners included this amount in the "amount received in settlement." Likewise, in their amendment to their amended petition they included this amount as a part of the amount received in settlement and did not allege that such amount should be excluded therefrom. The respondent in his answer to the amendment to the petition denied generally the allegations with respect to section 99 and prayed for approval of his original determination as to 1952, except for an added deficiency resulting from the disallowance of a portion of attorneys' fees, his position being that the petitioners did not make a

[8] The treatment of the amount of $1.86, representing net profit from operations during the period of Government control, is not in issue. The petitioners excluded such amount from the amount reported as income in connection with their return for 1952; in the notice of deficiency the respondent did not restore the $1.86 to income; the petitioners in their election statement and in their amended returns for the taxable years 1944 and 1945 did not include such amount; and neither their amendment to the petition nor the respondent's answer to such amendment to the petition includes the $1.86.

valid election and that therefore section 99 did not apply. Since we have held that a valid election was made and since the petitioners at no time prior to the filing of their brief raised the contention that the amount of $17,014.06 should be excluded from the "amount received in settlement," it might well be concluded that they have effectively admitted that this item is properly to be included in the "amount received in settlement" which is to be excluded from income of 1952 pursuant to the provisions of section 99, and have not put the question in issue by their pleadings. In any event, we think the award made by the Motor Carrier Claims Commission should not be reduced by this amount in determining "the amount received in settlement." Such Commission specifically determined that this additional sum, although computed in the manner of interest, was not to be paid as interest but as a part of the total compensation which would repay the petitioner for loss in the property taken. As such it was a part of the "amount received in settlement" of the petitioners' claim which, pursuant to section 99, is to be deemed income in the years of Government control, and hence excluded from income of 1952. We cannot conclude that section 39.42–8 of the regulations is inconsistent with the statute in requiring that there be included in the "amount received in settlement" the sum equivalent to interest.

As stated, the petitioners take issue with the respondent's position that the attorneys' fees are deductible only from income of 1952. They contend on brief that such attorneys' fees, or at least some portion thereof, should be excluded in arriving at the "amount received in settlement," thereby in effect offsetting income of the years 1944 and 1945. However, section 99 makes no provision for carrying back to the years of Government control any expenses incurred in recovering an award. It deals only with amounts received in settlement of a claim. Under these circumstances, we are constrained to the view that section 99 cannot be interpreted as in any way affecting the well-established rule that under section 43 of the Internal Revenue Code of 1939 deductions are to be taken by a cash basis taxpayer in the year in which paid.

The petitioners also contend that since they retained the attorneys on a contingent fee basis to prosecute their claim, the award, to the extent of the attorneys' fees, should not be considered as a payment to them, relying upon *Cotnam* v. *Commissioner*, (C.A. 5) 263 F. 2d 119, reversing 28 T.C. 947. In that case the taxpayer had entered into an agreement with attorneys, on a contingent fee basis, to represent her in a suit to enforce an agreement made by a decedent to provide for the taxpayer in his will in consideration of services which she had rendered to the decedent. The taxpayer was awarded a judgment and the check in payment of the award was made payable to both her and her attorneys. The attorneys retained a portion of

the award and paid the balance to the taxpayer. In that case the Court of Appeals held that the taxpayer had, by entering into a contingent fee arrangement with her attorneys, in effect assigned to the attorneys a 40-percent interest in her claim, with the result that she was not in receipt of income to the extent of the amount retained by the attorneys. In so holding, the court relied upon provisions of the Alabama Code which provide that upon suits, judgments, and decrees for money "attorneys at law shall have the same right and power over said suits, judgments and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them," and concluded that the courts of Alabama had held that attorneys have the same rights as their clients.

The *Cotnam* case is distinguishable from the instant case. While Nebraska (in which State the petitioners reside) and South Dakota (in which State one of the petitioners' attorneys maintains his office) have statutory provisions providing that an attorney has a lien, for his compensation, upon money in the hands of an adverse party in an action in which he was employed (such lien attaching at the time of giving notice of lien to that party), such provisions are not similar to the Alabama statute in that they do not contain provisions that the attorneys shall have the same right and power over suits, judgments, and decrees as the clients had or may have.[9] Furthermore, the petitioners have cited no case decided by the courts of Nebraska or South Dakota, and we have found none, which holds that under the statutory provisions of either of such States an attorney is the assignee of an interest in the client's claim, whether or not the fee arrangement was on a contingent basis. Indeed, one case rather clearly indicates that the rule in Nebraska is directly to the contrary. See *Elliott* v. *Atkins*, 26 Neb. 403, 42 N.W. 403.

It is our conclusion that the awards, undiminished by the attorneys' fees, constituted taxable income to the petitioners under the principle of *Lucas* v. *Earl*, 281 U.S. 111; that the amount received in settlement which under section 99 is to be deemed income received in the taxable years 1944 and 1945, and therefore excluded from income of 1952, includes the award, undiminished by the attorneys' fees; and that such fees, in the amount stipulated, constitute proper deductions from income of the taxable year 1952.

*Decision will be entered under Rule 50.*

---

[9] Section 7–108, Neb. Rev. Stat. (1954), provides:

"Attorney's liens. An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party."

The South Dakota provision is similar. See S.D. Code sec. 32.1205 (Supp. 1960).