EDNA TUTTLE, APPELLANT, v. BERT A. WYMAN ET AL., APPELLANTS, FRANK M. JOHNSON ET AL., INTERVENERS, APPELLEES.

32 N. W. 2d 742

Filed June 11, 1948. No. 32324.

M. O. Bates, R. E. Bannister, and H. W. Baird, for appellants.

Davis, Stubbs & Healey and Beatty, Clarke & Murphy, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CHAPPELL, J.

After hearing upon and in conformity with issues made by the amended petition of Frank M. Johnson, intervener, and the amended petition of D. D. Ernst, administrator with the will annexed of the estate of Isaac Large, deceased, intervener, together with the respective answers of plaintiff and defendants thereto, the trial court entered a decree finding generally for interveners. Motion for new trial was overruled, whereupon plaintiff and defendants appealed to this court. Some 18 assignments of error are presented in their brief, all of which may be summarized as contending that the decree was not sustained by the evidence and was contrary to the law and the evidence. We conclude that such assignments are without merit and that the judgment should be affirmed.

Hereinafter Edna Tuttle will be generally designated as plaintiff, Bert A. Wyman and Della A. Wyman as defendants, Frank M. Johnson as intervener, and D. D. Ernst as administrator.

The decree found substantially that on August 12, 1943, plaintiff and intervener entered into a written

contract whereby she employed him as her attorney to enforce her legal rights in and to funds and real property allegedly possessed and held by defendants as constructive trustees. for the benefit of the legatees and devisees, of which plaintiff was one, under the will of Isaac Large, deceased. At the time of entering into the contract, plaintiff was without funds or property with which to pay intervener any compensation for his legal services, and it was understood and agreed that intervener was to have and receive his compensation solely from any funds or property recovered from defendants, and that if plaintiff recovered nothing, intervener was to receive nothing for legal services performed by him under the contract, but any funds or property recovered was to be held and used for the payment of intervener's compensation and the benefit of plaintiff.

The court found that intervener had fully and faithfully performed the terms of the contract and that by virtue of his legal services eventually procured for plaintiff a decree in the Supreme Court (Tuttle v. Wyman, 146 Neb. 146, 18 N. W. 2d 744), and a judgment upon the mandate therefrom in the district court for Dawson County, finding and decreeing that plaintiff was the owner of and entitled to a share in the estate of Isaac Large, deceased, as provided in the will, and that all of the land involved in this action and formerly owned by Isaac Large, together with a right to an accounting from defendants for the rents and profits of said lands from June 13, 1932, to July 13, 1945, was held in trust for the benefit of the devisees and legatees in the will.

The decree found further that between February 14, 1946, and February 25, 1946, after judgment had been entered on the mandate, plaintiff and defendants entered into a fraudulent conspiracy to cheat and defraud intervener of the compensation owing him under his contingent contract of employment with plaintiff. The

court found that at that time defendants had actual notice and knowledge that plaintiff had no property or funds with which to pay intervener the compensation earned by him under the contract, and knew that he looked for recovery thereof solely from the trust funds brought into existence and created by intervener through his services under the contract.

It was further found that on February 25, 1946, plaintiff and defendants, for the purpose of carrying out and consummating their conspiracy to cheat and defraud intervener as aforesaid, filed a collusive and fraudulent dismissal of plaintiff's action in the district court while the final accounting therein was still pending. However, it was found that such dismissal never became effective as a dismissal of the action in any event, for the reason that no order of dismissal was ever entered by the court in said cause and said dismissal was never at any time spread upon the journal of the court. It then found that intervener had a lien on the judgment entered upon the mandate of the Supreme Court, enforceable upon the trust funds created and brought into existence by the legal services of intervener for plaintiff, of which lien defendants had full notice and knowledge prior to entering into their conspiracy with plaintiff and prior to the filing of said dismissal.

The decree found that plaintiff intended to enter into and carry out such fraudulent conspiracy with defendants and that at the time of trial of the issues presented herein still had the fraudulent intent and purpose of carrying out and consummating such conspiracy and fraud against intervener.

The decree found and adjudged that intervener had a lien for his services upon the trust estate recovered for the benefit of plaintiff, which consisted of her one-half interest in the land aforesaid, and the proceeds of an accounting from defendants of the rents and profits thereof from June 13, 1932, to February 25, 1946. The value of the land on the latter date, over and above

encumbrances (which encumbrances did not exist on June 13, 1932), was found to be $40,300. The net rents and profits received by defendants from such lands were found to be $41,420, making a total of $81,720 as the value of the trust estate. The court found that the administrator could maintain his petition in intervention to the extent of recovering a sufficient amount of money to enable him to fully administer the estate of Isaac Large, deceased, pay all claims allowed, including a cash legacy provided in the will of deceased, and the costs and expenses of administration. The decree set aside $1,200 for such purposes and made that sum a lien upon the funds and property, any balance thereof to be distributed by the county court to the persons entitled thereto.

The decree thereafter allowed defendants a credit of $200, previously paid by them, which left a balance of $40,060 as the value of plaintiff's one-half interest in the trust funds and property. From that sum it was found and adjudged that intervener was entitled to recover $19,030 as of February 25, 1946, for services rendered by him as provided in his contract with plaintiff, which sum, together with costs advanced by intervener but remaining unpaid by plaintiff, and interest from February 25, 1946, to date of the decree, amounted to $20,667.27, for which amount judgment was entered and a lien imposed therefor upon the trust funds aforesaid, second only to the lien of the administrator.

The decree then ordered that unless such sums should be paid within thirty days, the real estate involved, or so much thereof as was necessary, should be sold as upon execution, to satisfy such liens, together with all costs, which were taxed to defendants.

The record is voluminous. It would unduly prolong this opinion and serve no good purpose to recite the evidence at length in this opinion. It is sufficient to state that we have examined the record and find that the evidence therein conclusively supports the decree

of the trial court. We find it unnecessary, however, to discuss or decide whether or not plaintiff was herself also defrauded by defendants.

Three matters in the accounting of rents and profits require brief discussion. Complaint was made that the court erred in admitting exhibit No. 70 over the objections of defendants. The exhibit was a purported accounting made by defendants for the rents and profits covering the years involved. There is no merit in the contention, because it is a well-established rule in this jurisdiction that: "The admissions and declarations of a party against his own interest upon a material matter and with reference to and pertinent to the issues being tried, are admissible in evidence against such party." Tuttle v. Wyman, 146 Neb. 146, 18 N. W. 2d 744.

Complaint was also made by defendants that defendant Bert A. Wyman's claim for personal services rendered to the trust estate during the years involved was erroneously disallowed. In the first place, defendants at all times claimed all the property as their own. In fact, defendant Della A. Wyman did at all times have a one-half interest in the property after Isaac Large's death on June 17, 1939, which was subject, however, to the claims of creditors and the costs and expenses of administration. Certainly no recovery could be had as compensation for serving defendants' own interests. On the other hand, the original fraud of defendants was not in collateral matters, but the constructive trust itself arose out of and was the result of actual fraud by defendants. See Tuttle v. Wyman, *supra.* In such a situation, a court of equity should deny any recovery for services rendered to the trust estate. To allow compensation to a constructive trustee in such cases would put a premium upon fraud. See Olson v. Lamb, 56 Neb. 104, 76 N..W. 433, 71 Am. S. R. 670.

With reference to the claim of defendants for monthly payments alleged to have been made by them to Isaac Large for his support during his lifetime, it should be

said that the claim was manifestly fictitious and fraudulent, therefore properly disallowed by the court.

We turn then to the question whether plaintiff's purported dismissal and satisfaction of the action were of any legal force and effect. In doing so, we conclude that they were not.

Section 25-601, R. S. 1943, provides: "An action may be dismissed without prejudice to a future action (1) by the plaintiff, before the final submission of the case * * * to the court where the trial is by the court; * * *." Section 25-1318, R. S. 1943, also provides: "All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action."

This court has specifically held that: "A 'dismissal' after final submission of a case to a * * * court, where trial is by the court, to be effective, must be by leave of court and upon its order, which order is required to be entered on its journal." Knaak v. Brown, 115 Neb. 260, 212 N. W. 431, 51 A. L. R. 237.

The original controversy between plaintiff and defendants had been finally submitted to the trial court, with a judgment thereon, and a judgment on the mandate from this court had been entered by the trial court, the effect of which was to find that all the land involved therein and herein, together with rents and profits thereof from June 13, 1932, to July 13, 1945, was held in trust by defendants for the benefit of the legatees and devisees under the will of Isaac Large, deceased. Only the net amount of such rents and profits was then left for determination by the trial court in an ancillary proceeding to enforce the judgment already entered, at the time plaintiff and defendants fraudulently attempted to dismiss with full notice and knowledge not only that intervener claimed a lien on the judgment, but also in the face of the fact that the administrator had previously filed a petition in intervention in behalf of the estate of Isaac Large, deceased, to recover for it and

the estate's effective administration, that portion of the rents and profits of the land from June 13, 1932, until June 17, 1939, the date of the death of Isaac Large.

It will be noted that there were no assets in the estate of Isaac Large except the land and the rents and profits therefrom, all of which defendants had theretofore fraudulently appropriated. The will of Isaac Large provided for payment of a small cash legacy and there were expenses and costs of administration then unpaid. That the administrator had not only the right but the duty to proceed as he did in the case at bar there is no question.

In that regard, Tyrrell v. Judson, 112 Neb. 393, 199 N. W. 714, relied upon by plaintiff and defendants, is distinguishable on the facts. In that case there were sufficient funds in the estate to pay the debts of deceased and the costs and expenses of administration. Therefore, the administrator was not permitted to maintain the action. That is not the situation here. Also, in Blochowitz v. Blochowitz, 130 Neb. 789, 266 N. W. 644, relied upon, there were no debts or costs and expenses of administration remaining unpaid in the estate. Also, in neither of the two above cases was there a specific legacy remaining unpaid and unsatisfied as in the case at bar.

Plaintiff's alleged dismissal was after final submission and judgment on the mandate, and without leave, or upon any order of the trial court entered on the journal. It was, therefore, ineffective as a dismissal.

Moreover, the rights of the administrator who intervened before plaintiff's purported dismissal was filed, also precluded any absolute right of plaintiff to dismiss. In such a situation, the right of plaintiff to dismiss the action was not absolute in the sense that the court had no power over or discretion with respect to its exercise. This court has heretofore affirmed that when justice to the court or to its officers or to any of the parties requires imposition of terms or retention of the cause on

the docket, the court in its discretion may impose such terms or refuse to permit dismissal. Further, the court's discretion to so act depends on the existence of rights which would be prejudiced by dismissal, and not in the manner in which the court may become cognizant of them, and is not conditioned on some formal claim or assertion of them in the record. Horton v. State, 63 Neb. 34, 88 N. W. 146.

We turn then to plaintiff's alleged satisfaction of the judgment. Such a satisfaction, even assuming that it was entered on the judgment record, which by stipulation here it was not, was but a receipt, and in the absence of intervening equities, which do not here exist, could be explained or avoided by satisfactory evidence, which does appear herein, that payment was never in fact made, or the entry was induced by fraud or other causes not producing an actual satisfaction. See Knaak v. Brown, *supra*. We conclude then that the alleged satisfaction was executed and filed by plaintiff without payment thereof, and solely for the purpose of perpetrating a palpable fraud upon the intervener and the administrator. It was, therefore, of no force and effect to deprive them of their lawful rights in and to the funds and property of the trust estate established by the judgment.

We turn then to the question whether or not intervener had a charging lien upon the judgment. We conclude that he did.

Section 7-108, R. S. 1943, provides: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party."

As stated in Cones v. Brooks, 60 Neb. 698, 84 N. W. 85: "The statute does not require that the notice shall

be in any specific form, or that it shall be given in any particular way; and we have no right to add anything to the law by construction." See, also, Counsman v. Modern Woodmen of America, on rehearing, 69 Neb. 713, 98 N. W. 414.

Clearly, the purpose of notice is to protect innocent parties who have no notice or knowledge that an attorney claims a lien on the judgment. There are none such involved in this case. Defendants actually had notice, and certainly no more could be required than that the claim for a lien should be filed in the action in which the services were rendered, prior to effective dismissal thereof.

Plaintiff and defendants had full notice and knowledge at all times that intervener claimed a lien, and the amount thereof. But, in any event, the petition in intervention duly filed before dismissal and satisfaction, was of itself sufficient notice.

The trust estate here involved was obtained for plaintiff by the efficient legal services of intervener by a judgment and the processes of the equity court for the satisfaction of her claim. It was all in the hands of the adverse parties, but actually in the custody of the law and under the complete jurisdiction and control of the court for that purpose.

Ordinarily, in the absence of an agreement therefor, a lawyer has no lien as such upon the lands of his clients. However, if properly perfected, he does have a lien upon the judgment or any process of the court, which lien is enforceable by intervention in the original action upon any money or property recovered thereby for the satisfaction of his client's claim.

As early as Griggs and Ashby v. White, 5 Neb. 467, this court held that: "An attorney has a lien upon a judgment to the extent of his reasonable fees and disbursements in the suit in which it was obtained. And this right is paramount to the rights of the parties in the suit." That opinion affirmed a judgment enforcing an

attorney's lien against the lands recovered by the judgment.

In Zentmire v. Brailey, 89 Neb. 158, 130 N. W. 1047, it was held: "An attorney's lien in due form, when filed in a pending action, binds realty previously attached therein to satisfy the client's claim." The theory of the court was that the statute (section 7-108, R. S. 1943) was simply declaratory of the common law, and gave the attorney a lien on any judgment or process of the court which was effective for the purpose of collecting and enforcing the client's claim.

In Williams v. Miles, 63 Neb. 851, 89 N. W. 455, it was said: "Had the action proceeded to judgment, on which would attach a lien in favor of plaintiffs' attorneys, or were the controversy of such a character as to bring funds, money, or property into the possession of the court, or custody of the law, on which the plaintiffs' attorneys could claim a lien, legal or equitable, for the value of their professional services and expenses incurred in the prosecution of the suit, we would not doubt our authority to protect and preserve such lien for their benefit, when jeopardized by contemplated action of their clients, * * *."

In a specific sense, the rents and profits here involved, were money in the hands of the adverse party. On the other hand, the statute giving an attorney a lien on money in the hands of the adverse party must be liberally construed. 6 C. J., Attorney and Client, § 365, p. 768. The word "money" is used not only in a specific but also in a comprehensive and general sense, and when so used, as we do here, and in similar cases where money or property or both are recovered by a judgment or its equivalent process of the court, then the word "means wealth,—the representative of commodities of all kinds, of lands, and of everything that can be transferred in commerce" for the satisfaction of a claim so established in litigation. See Black's Law Dictionary, Third Edition.

It is also a well-established rule that: "An agreement

between an attorney and client that the attorney shall have a lien on the judgment is decisive as to the existence of the lien and its amount, and constitutes a valid equitable assignment of the judgment pro tanto which attaches to the judgment as soon as it is entered." 6 C. J., Attorney and Client, § 366, p. 769. "Moreover, a charging lien may arise out of an agreement between a client and his attorney that he is to receive a portion of the judgment recovered or of the proceeds thereof, provided it appears to be the intention of the parties that such judgment or proceeds is to be looked to for security." 7 C. J. S., Attorney and Client, § 211, p. 1146. See, also, 5 Am. Jur., Attorney and Client, § 221, p. 394.

The foregoing propositions are squarely in point and controlling in the case at bar. Plaintiff had no money or property save and except the land and the rents and profits therefrom, which intervener, under his contract, recovered for her. She could pay him nothing for his services save and except therefrom. It was distinctly understood and agreed by plaintiff at all times that intervener was to have a portion of such recovery as compensation for his services. It was understood and agreed that the written contract between the parties so provided. The record admittedly and conclusively establishes that any recovery was to be security for the payment of intervener's compensation and that he was to have an interest in the funds and property recovered for the satisfaction of plaintiff's claims.

In that connection, plaintiff at one point was asked: "Q Well, you knew that he (intervener) was to have an interest in the property that you recovered, under the contract, didn't you? A If he had recovered it, yes, I would have felt like he had an interest; but I didn't feel like it was recovered." As a matter of course, it was recovered by the decree of this court and the judgment on the mandate of this court, and the very fraudulent intent and purpose of the purported settlement agreement between plaintiff and defendants and the very

fraudulent intent and purpose of plaintiff's purported dismissal and satisfaction, were to deprive intervener of that contractual interest and defeat his recovery of it as compensation for its creation.

Moreover, the record discloses that defendants had full notice and knowledge of the contract, and that intervener had such an interest at the time the conspiracy to defraud was entered into and perfected. Defendant Bert A. Wyman, who took the leading part in perfecting and carrying out the fraudulent plan, explained why it should be binding on intervener. In that regard, he testified at one point: "Q Well, anyway, the purpose was to settle around Frank Johnson? A That's right. * * *." At another point he testified: "* * * I was always under the impression that partners — what one did bound the other. * * * Q Now, what partners are you talking about? A Her and Frank Johnson. Q * * * You considered they were in more or less of a partnership in this matter? A That's right. Q And that what she did would bind Frank? A That's right."

Without doubt, intervener had a charging lien not only by statute but by agreement on any judgment recovered, which he had the right to enforce in the original action, paramount to the rights of the parties to the suit.

We turn then to the question of the method of enforcement. In that regard, this court has consistently affirmed that the proper method to enforce an attorney's lien is to file a petition in intervention in the original action. See, Spethman v. Hofeldt, 141 Neb. 83, 2 N. W. 2d 620; Zentmire v. Brailey, *supra*; and Jones v. Duff Grain Co., 69 Neb. 91, 95 N. W. 1. In each of the above cases, purported collusive settlements were made by the parties in an attempt to defraud the attorney of his compensation without his knowledge.

We conclude that intervener pursued the proper remedy and the question then presented is whether or not he could carry forward the litigation for the purpose of

establishing and protecting his own rights and interests, justly determining the amount of his compensation, and enforcing collection thereof, even though plaintiff might desire to terminate the case. We conclude that he had that right. Such procedure was approved by this court as early as Reynolds v. Reynolds, 10 Neb. 574, 7 N. W. 322, and thereafter affirmed in Spethman v. Hofeldt, *supra*, Zentmire v. Brailey, *supra*, Counsman v. Modern Woodmen of America, *supra*, and Jones v. Duff Grain Co., *supra*.

Other propositions of law are presented in the briefs, but we deem it unnecessary to discuss them.

For the reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.