DOROTHY A. BARBER, APPELLEE AND CROSS-APPELLEE, V. CHARLES A. BARBER, APPELLANT AND CROSS-APPELLEE.
SARAH JANE CUNNINGHAM, INTERVENOR-APPELLEE AND CROSS-APPELLANT.

296 N.W.2d 463

Filed August 22, 1980. No. 42912.

Sinor & Blount for appellant.

Sarah Jane Cunningham of Cunningham Law Office, P.C., for intervenor-appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

This case involves an appeal by Charles A. Barber (Charles), the respondent below, and a cross-appeal by

Sarah Jane Cunningham (Cunningham), attorney and member of the Nebraska State Bar Association, from a judgment entered by the District Court for Red Willow County, Nebraska, upon her amended petition of intervention filed in the original dissolution of marriage action between Charles and the petitioner below, Dorothy A. Barber (Dorothy), to recover attorney fees awarded in the decree of dissolution of the marriage between Dorothy and Charles. On May 21, 1979, the court entered judgment in favor of Cunningham and against both Charles and Dorothy for the amount of $8,745.77 and the present appeals are from that judgment. We affirm as modified.

The evidence is uncontroverted that in early October 1975, Dorothy retained Cunningham to represent her in her dissolution action against Charles. The evidence is somewhat conflicting as to the exact nature of the agreement between them with reference to the payment of attorney fees. Cunningham testified that their agreement was as follows: "I told Mrs. Barber that we would require a $250 retainer fee out of which we would pay the filing fee of the Court which was $50; that in dissolution actions the Court normally awarded a fee for the petitioner's attorney particularly if the petitioner was the wife and that out-of-pocket expenses would be over and above that; that if the allowance awarded by the Court was sufficient for the time and effort expended by myself that that would satisfy her obligation to me. If not, she would be billed for the additional on an hourly basis. ... Yes, our hourly rate at that time was $45 an hour." Dorothy's version of what transpired was as follows: "Well, I recall that there was a retainer fee of — I paid $250 that day. I understand that $50 of that was to go to the court for the filing and other than that I really don't recall what the fee was other than when I walked out of the office I felt assured that whatever the fees would be assessed to me as for my lawyer fees would be taken care of by [Charles]."

There is also evidence in the record indicating that Dorothy and Cunningham entered into this arrange-

ment because Dorothy did not have the necessary funds to pay Cunningham for her services. The trial court found that the contract for compensation between Dorothy and Cunningham provided for attorney fees in "such amount as may be allowed by the District Court in the dissolution action but not less than $45 per hour." In its memorandum opinion entered on June 14, 1977, the district judge who tried the original dissolution action stated: "Costs will be taxed to the husband including an allowance of $9,000.00 *to apply on attorney fees for the wife.*" (Emphasis supplied.) However, the entry on the trial docket states: "Costs of this action are taxed to the respondent, including a fee of $9,000.00 for petitioner's attorney." The modified decree entered on March 14, 1978, provides, among other things: "All other terms of the original Decree entered June 14, 1977 as modified on November 4, 1977, shall remain and be in full force and effect." Finally, the final decree in the dissolution action, as contained in the journal entry for all the hearings, and executed by the court on September 21, 1977, specifically provides: "Costs of this action are taxed to the respondent, including a fee of $9,000 for petitioner's attorney." The court also found that the journal entry should conform to the docket notes entered by the court on the respective dates of entry, "they representing the actual order of the court . . . ."

Before discussing the legal ramifications involved in the foregoing award of attorney fees, attention must be called to certain other pertinent facts revealed in the record which must be considered in the disposition of this appeal. Under date of May 15, 1978, Dorothy executed a "Release" to Charles reading as follows: "In consideration of One Dollar and other valuable consideration paid to me by Charles A. Barber, receipt whereof is hereby acknowledged, I, Dorothy A. Barber, do hereby release and discharge Charles A. Barber from all claims, liens, and judgments *issued for attorney fees* in the above entitled action, in all respects, as

though the judgment had not been rendered." (Emphasis supplied.) This release was filed in the District Court for Red Willow County on May 31, 1978. On the same date the release was executed, to wit, May 15, 1978, Charles and Dorothy entered into a written agreement between themselves, reading as follows:

"AGREEMENT

"Agreement made this 15th day of May, 1978, between Charles A. Barber and Dorothy A. Barber.

"In consideration of One Dollar and other valuable consideration, receipt of which is hereby acknowledged, Charles A. Barber hereby agrees to pay any and all attorney fees presently due and owing Cunningham Law Office, P.C. by Dorothy A. Barber arising from the divorce of Charles A. Barber and Dorothy A. Barber from the District Court of Red Willow County, Nebraska, Case No. 10,890, and to pay any and all attorney's fees arising from any subsequent litigation between the parties and Cunningham Law Office, P.C.

/s/ Charles A. Barber

CHARLES A. BARBER

s/s Dorothy A. Barber

DOROTHY A. BARBER"

The agreement was separately acknowledged and notarized on May 15, 1978, and May 31, 1978, respectively, by Charles and Dorothy. The parties had also previously stipulated at or about the above date that certain parcels of real estate owned by them would not be subject to any lien or encumbrances arising by reason of the lawsuit, and agreed that the real estate is free and clear of any liens, costs, encumbrances, judgment, or any other order of the court which might restrict the right of Charles to convey the property, giving the purchaser a free and clear title thereto.

In any event, immediately upon learning of the release of attorney fees executed by Dorothy and of the agreement between Charles and Dorothy for the assumption of the payment of attorney fees, Cunningham, on or about June 20, 1978, applied to the District Court

for leave to intervene in the action and was granted leave to file a petition in intervention; thereafter, on September 15, 1978, with permission of the court, Cunningham filed an amended petition of intervention. In her amended petition, she sets forth seven separate causes of action or theories of recovery of attorney fees, ranging from a request for a judgment for such fees to specific claims of a judgment lien for such fees and a request for an attorney's lien upon Charles' property, both by virtue of statute and by agreement, and also on the theory of a third-party beneficiary contract based upon the agreement between Charles and Dorothy that Charles would assume the payment of Cunningham's attorney fees. She also charged collusion and fraud on the part of Charles and Dorothy.

Following a trial on the amended petition of intervention filed by Cunningham, held before a different district judge than the one who originally heard the dissolution action, the court, as previously stated, entered judgment in favor of the intervenor Cunningham "against the petitioner Dorothy A. Barber and the respondent Charles A. Barber jointly and severally in the sum of $8,745.77, such amount to bear interest from this date at 8% per annum and for the costs of this action, if any, since intervention." In its judgment entry, the court, in so doing, made certain findings of fact which we believe are material and supported by the evidence, including a finding that the contract terms of employment were "such amount as may be allowed by the District Court in the dissolution action but not less than $45 per hour"; that the district judge had assessed the costs of action to the respondent "including a fee of $9,000 for petitioner's attorney"; that subsequent to the decree of dissolution, petitioner had employed attorney Harold Kay to represent her, and on September 19, 1977, both the intervenor and Harold Kay represented the petitioner before the District Court; that on November 4, 1977, the court overruled the motion for new trial but made some corrections in

the values used in the distribution of the property; that no appeal was taken from the decree of dissolution or from the order overruling the motion for a new trial, but by stipulation, on December 1, 1977, the petitioner and respondent agreed to amend the distribution and acknowledged that performance would constitute satisfaction of the decree of dissolution and the court entered a modified decree in conformity with that stipulation; that "neither the stipulations nor the modified decree changed the amount of the liability for attorney's fees"; that on May 3, 1978, the petitioner and respondent by stipulation released certain real estate and lots from liens of the judgment; that on May 31, 1978, the petitioner filed a release discharging the respondent from all claims, liens, and judgments issued from attorney fees in the action; that "On June 5, 1978, the intervenor filed notice of attorneys' lien" and has received the sum of $304.23 from the petitioner toward attorney fees and costs; that "the evidence does not disclose nor is it sufficient to establish the number of hours actually consumed or charged by the intervenor for services rendered to the petitioner"; and that the intervenor is entitled to recover from the petitioner the sum of $9,000 as agreed compensation for her services with credit for the $304.23 previously made to intervenor, but is not entitled to recover the additional services performed subsequent to the entrance of the first decree without a showing of the total hours devoted thereto. The trial court also specifically found that: "The original $9,000 judgment in favor of the petitioner and against the respondent has been satisfied and released. The release was obtained and filed without the payment of the specific $9,000 attorneys' fees awarded. However, in the absence of a showing of both fraud and damage, the release should not be set aside." And, finally, the court specifically found: "The respondent has legally assumed the responsibility for paying any attorneys' fees due from the petitioner to respondent by an agreement filed herein," and: "There has been

no showing that there would be any difficulty in collecting a judgment in favor of the intervenor and against the petitioner and respondent jointly and severally. In the absence of such showing, there is no need to re-establish the original lien or assert an attorneys' lien, as a judgment rendered at this time should be sufficiently collectible." In its decree, the court also dismissed certain causes of action contained in Cunningham's amended petition of intervention.

With the above facts as background, we now examine certain legal questions which arise therefrom.

We first briefly consider appellant's contention that the agreement between Dorothy and Cunningham for representation in the divorce action was a contingent fee contract, and thus void as against public policy. We find no merit in that contention. Had the agreement been that the attorney was to receive a percentage of the alimony awarded or property recovered in the action, such an agreement, by previous decision, would have been invalid and unenforceable. The agreement in question, however, stands in a different light. In effect, it was an agreement that Cunningham would charge $45 per hour for her services, with the further restriction, however, that if the court awarded her what she deemed a fair and reasonable fee, she would accept the court's award in full satisfaction of her services. In Black's Law Dictionary 553 (5th ed. 1979), the term "Contingent fees" is defined as: "Arrangement between attorney and client whereby attorney agrees to represent client with compensation to be a percentage of the amount recovered; e.g. 25% if case is settled, 30% if case goes to trial. Frequently used in personal injury actions. Such fees are often regulated by court rule or statute depending on the type of action and amount of recovery." The agreement between Cunningham and Dorothy was clearly not a "contingent fee" contract under the foregoing definition.

In the case before us, we are initially confronted with the problem of the ownership of the award of

attorney fees made by the trial court. Authorities are concededly divided on the answer to this question, but the general rule seems to be, as set out in 27A C.J.S. *Divorce* § 216 (1959): "The allowance of counsel fees and suit money is ordinarily regarded to be for the wife and should be made to her, and not to the parties who perform services for her, or to whom she becomes indebted in connection with the litigation. Accordingly, attorney's fees are for the benefit of the wife, and her attorney has no separate equity therein notwithstanding a statute provides that the court may order the payment of such fees directly to the attorney." Likewise, in 27B C.J.S. *Divorce* § 255 (1959), it is stated: "Attorneys' fees. An attorney for whose benefit an order has been made directing the payment of attorney's fee in connection with a divorce action has sufficient interest in the matter to seek the enforcement of such order; but it has been held that even when an award of attorney's fees is made, the attorney does not acquire a vested interest in the judgment." In 20 Am. Jur. 2d *Costs* § 3 (1965), the rule is stated: "Unless the statute specifically provides that an attorney's fee allowable thereunder goes to the attorney, however, the rule is that it is an allowance to the party and not to the attorney." And in 24 Am. Jur. 2d *Divorce and Separation* § 581 (1966), it is stated: "It is generally held that orders providing for payment directly to the attorney are void. According to other authority, however, an order that payment be made to the attorney should be treated as one for payment to the wife, and an alternative provision making the sums awarded payable to plaintiff or her attorney has been held not to render the order void." In *Howard v. Howard*, 300 S.W. 2d 853 (Mo. App. 1957), it was held that an allowance for attorney fees cannot be made to the attorney for the reason that the attorney is not a party to the action. What is the rule in Nebraska? It appears that the former rule in Nebraska, as reflected in the case of *Solomon v. A. W. Farney, Inc.*, 136 Neb. 338, 286 N.W.

254 (1939), was that, while attorney fees are allowed and awarded to the client, they actually belong to the attorney. However, in 1947, in the case of *County of Sarpy v. Gasper*, 149 Neb. 51, 30 N.W.2d 67 (1947), the statements contained in *Solomon* were disapproved, the court stating: "In this state attorney's fees are allowed only in such cases as are provided for by statute. [Citation omitted.] When they are allowed they can be awarded only as provided by statute; in this case that is to the plaintiff, Sarpy County. The statements in the case of Solomon v. A. W. Farney, Inc., 136 Neb. 338, 286 N. W. 254, 'While attorney fees are allowed and awarded to the client, they actually belong to the attorney' and 'The conclusion is, therefore, that the sum of $350 originally allowed by court orders as attorneys' fees for plaintiff's attorneys, and as such taxed as costs, was at all times the property of the latter,' are disapproved, and to that extent the holding in Solomon v. A. W. Farney, Inc., *supra*, is overruled." *Id.* at 54, 30 N.W.2d at 68-69. So far as we are able to ascertain, the rule as announced in the above case has not been changed and is still the existing rule of law in the State of Nebraska. We, therefore, conclude that in the instant case, the court's award for attorney fees for petitioner's attorney was the property of and made for the benefit of the wife and was not the property of the attorney. It would seem, therefore, that since Dorothy was the owner of the judgment or order for the payment of money under Neb. Rev. Stat. § 42-371 (Reissue 1978), she would, prima facie at least, have the right under that section to execute a partial or total release of judgment, generally or on specific property, at least in the absence of evidence of fraud or collusion to deprive the attorney of her ability to collect attorney fees.

This, however, does not mean that an attorney rendering services for the wife in a divorce proceeding is not entitled to recover compensation for his services, either by virtue of a judgment entered in his favor by a court, or by the imposition of an attorney's lien, either

statutory or a charging lien arising out of a contract.

In his appeal to this court, Charles has alleged as his principal contention that the District Court committed error in allowing Cunningham to intervene in the dissolution proceedings, and strenuously argues in his brief that an attorney does not have a right to intervene in a dissolution of marriage action after judgment for the purpose of collecting attorney fees. It is true that in *Harris v. Harris,* 151 Neb. 191, 36 N.W.2d 849 (1949), this court stated that, ordinarily, there is no right of intervention by third parties in an action for divorce. However, in that same case, we also stated: "In a divorce action however where intervention becomes necessary to secure justice or to protect rights intervention becomes proper. [Citations omitted.]" *Id.* at 194, 36 N.W.2d at 850. Likewise, in *Kula v. Kula,* 181 Neb. 531, 149 N.W.2d 430 (1967), we held that, as a general rule, intervention is not permitted in a divorce suit for the purpose of opposing a divorce, but intervention may be allowed where it is necessary to secure justice for third persons whose property interests may be adversely affected. We conclude that under the facts of the case before us intervention was properly allowed.

Neb. Rev. Stat. § 7-108 (Reissue 1977) provides: "An attorney has a lien for a general balance of compensation upon any papers of his client which have come into his possession in the course of his professional employment; and upon money in his hands belonging to his client, *and in the hands of the adverse party in an action or proceeding in which the attorney was employed from the time of giving notice of the lien to that party.*" (Emphasis supplied.)

In *Cones v. Brooks,* 60 Neb. 698, 700, 84 N.W. 85, 86 (1900), in which a statute substantially similar in wording to § 7-108 was examined, we stated: "The statutory and common law lien upon money in the hands of the adverse party in an action or proceeding in which the attorney was employed is a charging or specific lien,

and is not perfected until notice has been given to the party in possession of the fund. Such notice is necessary to prevent a *bona fide* settlement of the controversy by the litigants and payment by the debtor to the creditor in ignorance of the attorney's rights. [Citation omitted.] The notice need not be in writing or placed among the files of the case. Any notice of the existence of the claim, and that it will be asserted, is sufficient. [Citations omitted.] The statute does not require that the notice shall be in any specific form, or that it shall be given in any particular way; and we have no right to add anything to the law by construction."

An important case in this connection is *Tuttle v. Wyman*, 149 Neb. 769, 32 N.W.2d 742 (1948), in which we held that the intervenor had a charging lien not only by statute but by agreement on any judgment recovered, which he had the right to enforce in the original action, paramount to the rights of the parties to the suit, and we stated: "We turn then to the question of the method of enforcement. In that regard, this court has consistently affirmed that the proper method to enforce an attorney's lien is to file a petition in intervention in the original action. [Citations omitted.]" *Id.* at 782, 32 N.W.2d at 750. We also stated in that case: "Plaintiff and defendants had full notice and knowledge at all times that intervener claimed a lien, and the amount thereof. *But, in any event, the petition in intervention duly filed before dismissal and satisfaction, was of itself sufficient notice.*" *Id.* at 779, 32 N.W.2d at 748-49 (emphasis supplied). In *Tuttle,* we also stated: "'An agreement between an attorney and client that the attorney shall have a lien on the judgment is decisive as to the existence of the lien and its amount, and constitutes a valid equitable assignment of the judgment pro tanto which attaches to the judgment as soon as it is entered.' [Citation omitted.] 'Moreover, a charging lien may rise out of an agreement between a client and his attorney that he is to receive a portion of the judgment

recovered or of the proceeds thereof, provided it appears to be the intention of the parties that such judgment or proceeds is to be looked to for security.' [Citations omitted.]" *Id.* at 780-81, 32 N.W.2d at 749.

It is clear from the record, as previously mentioned, that it was contemplated and intended that the fees for the legal services by Cunningham to Dorothy would come in large part, if not entirely, from the award of attorney fees entered by the court in the dissolution decree. The record is quite clear that Charles had knowledge of Cunningham's claim for recovery of attorney fees at least as early as the entry of the original decree of June 14, 1977, and until the date Cunningham filed her motion to intervene. That being so, it would seem clear that Cunningham had both an attorney's lien under the Nebraska attorney's lien statute and also a charging lien on any judgment recovered, by virtue of her agreement with Dorothy, and that Cunningham had the right to enforce such lien in the original dissolution action. We have held that a divorce case is pending until all matters involved therein or incidental thereto are determined and satisfied. *Miller v. Miller*, 160 Neb. 766, 71 N.W.2d 478 (1955); *Kiddle v. Kiddle*, 90 Neb. 248, 133 N.W. 181 (1911). In her amended petition in intervention, Cunningham claimed not only a judgment for the attorney fees, but also a judgment lien on the real estate owned by Charles in the county, and also both a statutory attorney's lien and a charging lien created by agreement. In addition, the equities of the situation were, we believe, enhanced by the agreement between Charles and Dorothy whereby Charles agreed to pay the Cunningham attorney fees, which, we believe, amounted to a third-party beneficiary contract of the creditor beneficiary type, for the benefit of Cunningham. See, *Fowler v. Doran*, 123 Neb. 37, 241 N.W. 759 (1932); *Lundt v. Parsons Constr. Co.*, 181 Neb. 609, 150 N.W.2d 108 (1967); Restatement of Contracts § 133(1)(b) (1932). We conclude that the trial court acted properly in permitting Cunningham to intervene

in the dissolution action to protect her rights to an attorney fee under the various remedies available to her, as set out in her amended petition of intervention. See, *Tuttle v. Wyman, supra; Jones v. Duff Grain Co.*, 69 Neb. 91, 95 N.W. 1 (1903); *Neighbors & Danielson v. West Nebraska Methodist Hospital*, 162 Neb. 816, 77 N.W.2d 667 (1956).

It is the general rule that if a court of equity has properly acquired jurisdiction in a suit for equitable relief, it may make complete adjudication of all matters properly presented and involved in the case and grant relief, legal or equitable, as may be required and thus avoid unnecessary litigation. *Kuhlman v. Cargile*, 200 Neb. 150, 262 N.W.2d 454 (1978); *Hull v. Bahensky*, 196 Neb. 648, 244 N.W.2d 293 (1976). This rule would seem to be particularly applicable under the facts of this case.

Charles next contends that it was error for the District Court to deny his request for a jury trial. Specifically, Charles contends that the petition of intervention was an action for the recovery of money which shall be tried by a jury unless a jury trial is waived. See Neb. Rev. Stat. § 25-1104 (Reissue 1979). The same issue was presented in *Neighbors & Danielson, supra*. After recognizing that ordinarily the value of an attorney's services would be a question for the jury, the court stated: "However, as here, when a charging lien is created by agreement, an action to establish and enforce it is within the equity jurisdiction of the court. As stated in 5 Am. Jur., Attorneys at Law, § 244, p. 408: 'In the absence of statutes giving jurisdiction to courts of law, the proper method — or, at least, one method — for enforcing an attorney's charging lien is by a resort to equity; such a lien is equitable in its nature.' Then it goes on to state: 'In some instances, a formal suit should be instituted; in others, an application to the court rendering the judgment for the proper order is sufficient.'" *Id.* at 819-20, 77 N.W.2d at 670.

Charles also contends that the compensation con-

tract for services between Dorothy and Cunningham was ambiguous, and that compensation should have been determined on the basis of the time spent in connection with the litigation billed out at the hourly rate of $45 per hour. We might have agreed with this argument if, in fact, the contract was ambiguous in its terms. However, we believe the record fully establishes that both Dorothy and Cunningham understood that the amount of compensation to the attorney, upon completion of the proceedings, would be that amount awarded by the trial court, but not less than $45 per hour. While the amount of compensation to be paid was unknown at the time Dorothy retained Cunningham, it does not necessarily follow that the contract was ambiguous. It would have been no less ambiguous had they agreed specifically that the compensation should be based on the time spent at the specified hourly rate, as it could not have been determined in advance how much time would be devoted to the litigation, or what the total fee to be paid would amount to.

Charles likewise contends that the trial court erred in allowing evidence with reference to the fair and reasonable value of Cunningham's services rendered in the dissolution action. It must be remembered that this case was tried to the court and not to a jury. We have often stated that a presumption arises that the trial court, in trying a case without a jury, will consider only such evidence as is competent and relevant and this court will not reverse a case so tried because evidence was erroneously admitted where there is other material, competent, and relevant evidence sufficient to sustain the trial court's judgment. See, *Murdoch v. Murdoch*, 200 Neb. 429, 264 N.W.2d 183 (1978); *Stecker v. Stecker*, 197 Neb. 164, 247 N.W.2d 622 (1976). We also reject this assignment of error.

This leads us to what is perhaps the principal contention voiced by Charles in his brief on appeal: that the amount awarded by the court was excessive. The marital estate involved in this dissolution proceeding

was of considerable magnitude. The evidence in the record indicates a gross value of the estate of approximately $2.7 million and a net value in excess of liens and indebtedness of over $1 million. A great amount of research was required in preparation for the filing of the lawsuit and the trial thereof, as well as in researching the tax consequences to an estate of that size. The original petition for dissolution of the marriage was filed by Cunningham in October 1975; and, according to the record, attorney Harold Kay was first contacted by Dorothy on June 20, 1977. Even after the employment of Kay, the record reveals that Cunningham continued as cocounsel with Kay, and continued to work on the case. In fact, the court's docket entry of September 19, 1977, states: "Petitioner represented by Sarah Jane Cunningham and Harold Kay." There can be no doubt that Cunningham devoted a great amount of time and effort in connection with the litigation involved in this appeal.

Although it is true, as found by the trial judge, that there is no evidence in the record as to the total amount of hours devoted by Cunningham to this case, we do not believe that the lack of such a record is in any way conclusive or forecloses Cunningham from recovering the attorney fees awarded her by the court for her services. There are many elements taken into consideration by a court in setting the amount of an award for attorney fees in dissolution actions. In *Weber v. Weber*, 200 Neb. 659, 671, 265 N.W.2d 436, 443 (1978), we stated: "The award of attorney's fees involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services actually performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. [Citations omitted.]" See, also, *Campbell v. Campbell*, 202 Neb. 575, 276 N.W.2d 220 (1979). Similar criteria are

set out in the Code of Professional Responsibility, DR 2-106. In view of the size of the marital estate involved, the complexity of the litigation, the time devoted to it, and the results obtained, we are unable to find under the guidelines cited above that the award of $9,000 as attorney fees to Cunningham constituted an abuse of discretion. This is especially true in view of our well-established rule that, while an action for dissolution of marriage is heard de novo in this court, this court will give weight to the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. *Olson v. Olson*, 195 Neb. 8, 236 N.W.2d 618 (1975). See, also, *Edmunds v. Edwards*, 205 Neb. 255, 287 N.W.2d 420 (1980).

We have also examined the assignments of error set out by Cunningham in her cross-appeal and have concluded that no abuse of discretion on the part of the trial court occurred, as contended by her, and that such assignments are without merit.

We note that the trial court in its decree declined to reestablish a lien in favor of Cunningham for the reason that there would appear to be no problem in collecting the judgment it awarded her for attorney fees. We are of the opinion that, under the evidence in this case, Cunningham was undoubtedly entitled to a lien on property owned by Dorothy and Charles as security for payment of the judgment, and that the sufficiency of the property of the judgment debtor to satisfy such judgment should not be grounds for removing such lien. We, therefore, affirm the action of the trial court awarding Cunningham a judgment for attorney fees, and in addition, find Cunningham was entitled to an attorney's lien as of the date of the judgment to secure the payment of the judgment, and we modify the judgment of the trial court to grant Cunningham such lien.

AFFIRMED AS MODIFIED.