RICHARD S. KLEAGER, APPELLEE, V. WALTER SCHANEMAN, APPELLANT, AND MARY SCHANEMAN, APPELLEE.

322 N.W.2d 659

Filed July 30, 1982.  No. 44273.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellant.

James R. Hancock of Hancock Law Offices, for appellee Kleager.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

HASTINGS, J.

This was an action brought by the plaintiff, Richard Kleager, to recover an attorney fee, said action being in the nature of, and tried as, a suit to foreclose an attorney's lien. After trial to the court without a jury, a judgment was entered in favor of the plaintiff and against the defendant Walter Schaneman in the sum of $5,633.33. The defendant has appealed to this court, assigning as errors the following: (1) That the trial court erred in finding this action to be one to foreclose a lien and thereby improperly denied the defendant Walter Schaneman a jury trial; and (2) That the court erred in finding that the plaintiff had a lien on the money paid into the divorce case because (a) there was inadequate notice to the defendant that the plaintiff claimed a lien, and (b) an attorney's lien would not attach to money paid into court in any action other than the action in which the legal services were rendered and which formed the basis for the lien.

Mary Schaneman, the other defendant in this action and who did not appear and against whom no

judgment was entered, had secured a decree of divorce from Walter Schaneman in March of 1966. As a part of the decree she was awarded a judgment for child support in the amount of $200 per month. About 6 months later, Mary and Walter resumed living together. This arrangement lasted, off and on, until sometime in 1978. In October of 1978 Mary filed an action in the District Court for Scotts Bluff County, seeking an accounting of the properties accumulated while the parties were living together during the period 1966 to 1978, and for distribution of her rightful share of that property. The plaintiff was the attorney who filed that action for Mary, and at all times pertinent herein was a party to a fee contract executed by Mary whereby she agreed to pay him for his services in the accounting action an amount equal to one-third of all moneys recovered from that cause of action.

According to the plaintiff's testimony in the instant case, he and his client appeared for trial of the accounting action on March 6, 1980. However, Walter had discharged his attorney prior to that date, and the court refused to proceed until he had had an opportunity to obtain another attorney. He further testified that the court rescheduled the trial and then suggested that the parties could use the courtroom to discuss a settlement. The plaintiff also testified that he suggested to Walter that they discuss a possible settlement, but that Walter responded by saying he had no offer to make. In addition, the plaintiff stated that at the time of this discussion Walter was aware of the fee arrangement whereby the plaintiff was to receive one-third of any settlement or judgment in the case, but that Walter informed the plaintiff that he, Walter, would find some way to compensate or pay Mary so that her attorneys would never receive anything by way of fees.

The defendant, by his testimony, agreed that the parties appeared in court on March 6, and that he

was granted a continuance by the court to obtain a lawyer. He also admitted that the court suggested that the parties discuss settlement. Furthermore, he agreed that the plaintiff asked him if he wanted to settle the case, and he said no and started to leave. However, he denied that anything was said about the contingent fee contract at that session, but did admit that he had learned from Mary just before they went to court on March 6 that such a contract did exist. The defendant further testified that he had never heard anything about an attorney's lien until the present case was started.

On cross-examination, the following questions and the answers given by the defendant are somewhat informative: "Q Tell us about that, please? What did you mean? A I was trying to settle the case. Q Now, that was during the hearing? A Yes. Q Why were you trying to settle the case? A I don't like law suits, I wanted to settle it and get out of it. Q And by settling it, what did you intend to do? A I don't know. Q Would you have paid some type of sum to settle that case? A Not one red cent on the Marvin v. Marvin-type case. Q Well, then what was the purpose of your making the statement to the Court that you might settle the case? A I not only might settle it, I did settle it. Q So, you agree that you did settle the case? A Yes. Q Okay. A It's dismissed, it's settled. Q And how did you achieve that settlement? A She called me up one day and told me she wanted to get out of here. Q That is — A She wanted to leave this law suit because this law suit was dragging on forever and she wanted to go. She had been living here for six months in a dump in town waiting for this law suit to get over with and nothing was happening."

The defendant went on to testify that on March 11, 1980, he and Mary went to the clerk of the District Court's office where Walter gave the clerk a cashier's check for $16,900. This amount was credited

toward the judgment for child support, and Mary receipted for and was paid that amount. Thereafter, Mary filed a written dismissal of the accounting action. The judgment docket in the clerk's office revealed a satisfaction and release of all support payments accrued through December 1969, so that at the time of the payment of the $16,900 on March 11, 1980, the amount of unpaid child support which had actually accrued was approximately $8,430. Furthermore, we note that since March 11, 1980, through December 3, 1980, Walter has made child support payments totaling $1,450.

The plaintiff learned of the dismissal of the accounting action from someone in the office of the clerk of the District Court, and on May 28, 1980, he filed the present action. After reciting the pertinent facts set forth above, the petition went on to allege the existence of a valid attorney's lien under the provisions of Neb. Rev. Stat. § 7-108 (Reissue 1977), and prayed for judgment in the amount of $5,633.33, representing one-third of the amount paid by the defendant to Mary on March 11. The petition also prayed for an accounting and determination of the fees which had accrued, and for "such other and further relief as may be just and equitable."

Defendant's claimed error in having been denied a jury trial is without merit. Under Nebraska law, the proper method for enforcing an attorney's charging lien is by resort to equity, because such a lien is equitable in nature. *Neighbors & Danielson v. West Nebraska Methodist Hospital,* 162 Neb. 816, 77 N.W.2d 667 (1956). The pleadings in the present action joined issue on the question of whether the plaintiff possessed a legitimate attorney's lien upon which he could "foreclose." Therefore, it was an equitable action in which the defendant was not entitled to a jury trial. The remaining problem is to ascertain whether the evidence supports a finding that such a lien in fact existed and was enforceable.

Equity actions on appeal to this court are triable de novo on the record and we are required to reach an independent conclusion without reference to the findings of the District Court, subject to the condition that when the evidence on material questions of fact is in irreconcilable conflict, we will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and must have accepted one version of the facts rather than the opposite. *Cline v. Franklin Pork, Inc.,* 210 Neb. 238, 313 N.W.2d 667 (1981).

"An attorney has a lien for a general balance of compensation . . . upon money . . . in the hands of the adverse party, in an action or proceeding in which the attorney was employed, from the time of giving notice of the lien to that party." § 7-108. One of the earlier Nebraska cases construing this statute, and upon which the defendant places great reliance, is *Elliott v. Atkins,* 26 Neb. 403, 42 N.W. 403 (1889). In that case this court stated: "An attorney, therefore, who desires to enforce a claim for his services, must file a lien to that effect; otherwise he cannot enforce a claim against the adverse party. This claim for a lien may be filed with the papers in the case, and the adverse party will be chargeable with notice of its existence. The existence of a contract between a client and his attorney, where there is no claim for a lien, would not be notice to the adverse party that he intended to assert the claim against him, as it might be presumed that such attorney intended to rely on the responsibility of his own client. In the case at bar there is no lien claimed or filed on behalf of the plaintiffs, and nothing to apprise the defendants that claims would be asserted against them." *Id.* at 409, 42 N.W. at 404-05.

However, it would appear that in later decisions, commencing with *Cones v. Brooks,* 60 Neb. 698, 84

N.W. 85 (1900), this court has taken a somewhat more liberal attitude as to notice requirements. In *Cones* we said: "The statutory and common law lien upon money in the hands of the adverse party in an action or proceeding in which the attorney was employed is a charging or specific lien, and is not perfected until notice has been given to the party in possession of the fund. Such notice is necessary to prevent a *bona fide settlement of the controversy by the litigants and payment by the debtor to the creditor in ignorance of the attorney's rights. . . .* The notice need not be in writing or placed among the files of the case. Any notice of the existence of the claim, and that it will be asserted, is sufficient. . . . The statute does not require that the notice shall be in any specific form, or that it shall be given in any particular way; and we have no right to add anything to the law by construction. These views are not in conflict with any of the past adjudications of this court; but it may be that they are not in accord with some intimations and *dicta* found in the earlier cases. *Lavender v. Atkins,* 20 Nebr., 206, *Elliott v. Atkins,* 26 Nebr., 403, and *Sheedy v. McMurtry,* 44 Nebr., 499, upon which counsel for defendant rely, are cases in which there was no money in the hands of the adverse party to which an attorney's lien could attach. The question of notice was not so involved as to make any of these cases a precedent for this." *Id.* at 700, 84 N.W. at 86. (Emphasis supplied.)

More recently, in *Tuttle v. Wyman,* 149 Neb. 769, 32 N.W.2d 742 (1948), we stated: " 'Moreover, a charging lien may arise out of an agreement between a client and his attorney that he is to receive a portion of the judgment recovered or of the proceeds thereof, provided it appears to be the intention of the parties that such judgment or proceeds is to be looked to for security.' 7 C.J.S., Attorney and Client, § 211, p. 1146. . . . Plaintiff had no money or

property save and except the land and the rents and profits therefrom, which intervener [attorney], under his contract, recovered for her. She could pay him nothing for his services save and except therefrom. It was distinctly understood and agreed by plaintiff at all times that intervener was to have a portion of such recovery as compensation for his services. It was understood and agreed that the written contract between the parties so provided. The record admittedly and conclusively establishes that any recovery was to be security for the payment of intervener's compensation and that he was to have an interest in the funds and property recovered for the satisfaction of plaintiff's claims." *Id.* at 781, 32 N.W.2d at 749-50.

Finally, in *Barber v. Barber,* 207 Neb. 101, 296 N.W.2d 463 (1980), we quoted with approval from *Tuttle* most of the language set out above. We concluded by observing that "The record is quite clear that Charles had knowledge of Cunningham's claim for recovery of attorney fees at least as early as the entry of the original decree . . . . That being so, it would seem clear that Cunningham had both an attorney's lien under the Nebraska attorney's lien statute and also a charging lien on any judgment recovered, by virtue of her agreement with Dorothy, and that Cunningham had the right to enforce such lien . . . ." *Id.* at 113, 296 N.W.2d at 471.

Defendant's argument that plaintiff's claim should fail because no actual lien was ever filed, nor did the plaintiff specifically think about a lien until after the settlement had been made, falls upon deaf ears. Paraphrasing the language of *Tuttle,* it was distinctly understood by Mary, as well as by the defendant, that the plaintiff was to have a portion of any recovery or settlement as compensation for his services. The record conclusively establishes that any recovery was to be security for the payment of plaintiff's services. That the defendant bragged

that he would find a way to pay Mary whereby the lawyers would get nothing by way of fees, and then immediately took positive action to carry out this threat, only served to strengthen the notion that the defendant knew that if he made the settlement direct and aboveboard the plaintiff's fee would be taken out of such fund. Under the circumstances, the plaintiff, by operation of law, was entitled to such lien whether defendant was specifically aware of it or not.

Nevertheless, the defendant argues an attorney has a lien on money in the hands of the adverse party only in the action or proceeding in which the attorney was employed. He cites *Reynolds v. Warner,* 128 Neb. 304, 258 N.W. 462 (1935), and *Nicholson v. Albers,* 144 Neb. 253, 13 N.W.2d 145 (1944), in support of this proposition. The language and holdings of those cases clearly substantiate that claim. "The statute does not give an attorney a lien for services rendered in other cases or for any fees not connected with the case." *Reynolds v. Warner, supra* at 308, 258 N.W. at 464. "The statute does not give an attorney a lien for services rendered in other cases, or for any fees not connected with the case. A charging lien is confined to the fees and costs due for services rendered in the particular action in which the judgment was obtained." *Nicholson v. Albers, supra* at 255, 13 N.W.2d at 146.

However, it would be the height of naivete for this court to believe that a payment by the defendant of $16,900 on an accrued judgment of $8,430 in a divorce case whereby another pending, disputed case is dismissed is not a "package settlement" of both cases. This is especially true when one considers that the defendant continued to make future periodic payments on the divorce case almost as they became due.

Although we believe that the payment in full of the accrued support payments was induced by a desire

to settle the accounting action, there was a legitimate judgment in the former case of $8,430 which the defendant was not only entitled to pay but was obligated to pay. However, as to the excess payment of $8,470, the only logical conclusion is that it was intended as additional consideration for a settlement of the accounting action, and, to that extent, was subject to the lien of plaintiff's attorney. One-third of that sum amounts to $2,823, which was a fee rightfully belonging to the plaintiff.

The defendant, by making payment directly to Mary, did so in violation of the plaintiff's rights under his lien. The plaintiff is entitled to a judgment against the defendant in the amount of $2,823. The judgment of the District Court is affirmed as modified.

AFFIRMED AS MODIFIED.